154 N.J. Super. 519 (1977)
381 A.2d 1235
ALFRED M. COZZI AND JULIET P. COZZI, PLAINTIFFS-APPELLANTS,
v.
GOVERNMENT EMPLOYEES INSURANCE CO., DEFENDANT-RESPONDENT, AND ALFRED M. COZZI AND JULIET P. COZZI, PLAINTIFFS-APPELLANTS,
v.
LIBERTY MUTUAL INSURANCE COMPANY AND GOVERNMENT EMPLOYEES INSURANCE CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1977.
Decided December 5, 1977.
*521 Before Judges ALLCORN, MORGAN and HORN.
Mr. Joseph Buttafuoco argued the cause for appellants (Mr. Alfred J. Cozzi, attorney).
*522 Mr. Adam T. Adams argued the cause for respondent Government Employees Insurance Co. (Messrs. Hansen, Pantages, Sellar & Zavesky, attorneys).
Ms. Joan B. Sherman argued the cause for respondent Liberty Mutual Insurance Company.
The opinion of the court was delivered by MORGAN, J.A.D.
The issue on this appeal concerns which of two insurance carriers, if either, is liable to plaintiffs pursuant to their medical payments coverage for personal injuries plaintiffs sustained in an automobile accident. The amount in dispute is $1304. The trial judge, by way of summary judgment, exonerated both carriers from liability. Plaintiffs appeal.
The controlling facts are not in dispute. Plaintiffs, husband and wife, were injured while passengers in a motor vehicle owned and operated by one William J. Bozzuffi (not a party) and insured by defendant Liberty Mutual Insurance Company (Liberty) when that vehicle was struck in the rear by another vehicle, also insured by Liberty. Medical expenses incurred by plaintiffs within one year of this accident totalled $1304. Plaintiffs commenced action against the drivers and owners of both vehicles, seeking to visit liability for the medical expenses and pain and suffering upon the responsible party. Liberty, as carrier for all defendants, participated in settlement negotiations which resulted in a termination of the litigation on February 20, 1974, evidenced by a release executed by plaintiffs in favor of Bozzuffi, their host driver, and the owner and operator of the other vehicle, the one which all concede to have been at fault and on whose behalf the claim was paid. Plaintiffs admit, in their brief, that Liberty had advised them of the available medical payments coverage but that it was subect to the right of subrogation against the parties responsible for the accident.
On March 4, 1974, after termination of the litigation, plaintiffs made claim for recovery of their medical expenses *523 against defendant GEICO pursuant to the medical payments provision contained in the policy issued to plaintiffs with respect to their own car. Judgment by default for the full amount claimed was entered on April 22, 1974. On November 10, 1975, about a year and a half after entry of the judgment, GEICO filed a motion seeking to have the default judgment set aside, asserting that its delay in seeking that relief resulted from the file having been lost. It asserted therein a meritorious defense to plaintiffs' claim based upon the existence of other valid and collectible insurance, the Liberty policy covering Bozzuffi, and that since the GEICO medical payments coverage with respect to a nonowned automobile was excess, it was not liable to plaintiffs therefor. The motion was granted on November 21, 1975, conditioned upon GEICO depositing in court the sum of $1300, an amount sufficient to cover in full plaintiffs' entire claim. In GEICO's answer, filed thereafter, it set forth its defense that the existence of other valid and collectible insurance in the full amount of plaintiffs' claim absolved it from liability because of the alleged excess nature of the coverage. Accordingly, plaintiffs started a new lawsuit in which they made claim under the medical expense provision of the Liberty policy covering the host driver, Bozzuffi, and both suits were then consolidated. The cross-motions for summary judgment were resolved in favor of both carriers.
Liberty's medical expense coverage provides, in pertinent part, for payment of "all reasonable medical expense incurred one year from the date of accident for bodily injury caused by accident and sustained by * * * any other person while occupying the owned automobile while being used by the named insured * * *." Clearly, such coverage on the Bozzuffi car, driven by him on the date of the accident, affords coverage to plaintiffs as "any other person" occupying the owned automobile, and Liberty does not otherwise contend.
The medical payments coverage, appearing as Coverage C in Part II of the GEICO policy, affords similar coverage in substantially identical terms. There, of course, coverage *524 is afforded to plaintiffs as named insureds who incur medical expenses resulting from bodily injury "while occupying a non-owned automobile * * *."
Although both carriers admitted that their respective medical payments coverage applied to plaintiffs' claim, they nonetheless denied liability  Liberty, on the ground that the prior settlement with all possible tortfeasors impaired its right of subrogation to which the coverage was subject, and GEICO, that its subrogation rights were also impaired and hence it was absolved from liability. GEICO also contended that its coverage was excess over the valid and collectible Liberty policy. The trial judge, in a brief letter opinion, apparently accepted both contentions, cited Busch v. Home Ins. Co., 97 N.J. Super. 54 (App. Div. 1967), and granted defendants' motions for summary judgment.
The context in which the issues raised are to be considered must be stressed. Plaintiffs have never contended that the settlement of their lawsuit in February 1974 excluded therefrom the medical expenses they incurred as a result of the accident. The release evidencing the settlement is general and nothing therein suggests that medical expenses were not embraced within its terms. See Bilotti v. Accurate Forming Corp., 39 N.J. 184, 203-204 (1963). Plaintiffs received in that settlement $7500 and are here claiming $1300 worth of medical treatment, the details of which were forwarded to Liberty at least a year before the settlement; hence, the amount of the settlement was clearly sufficient to indemnify plaintiffs for these expenses as well as for the pain and suffering incident to their injuries. Indeed, plaintiffs have never claimed throughout these proceedings, trial and appellate, that the settlement did not cover these claimed medical expenses as well as their pain and suffering. Instead, during oral argument, counsel candidly asserted plaintiffs' right to a recovery in excess of their losses by virtue of the collateral source rule, citing Long v. Landy, 35 N.J. 44 (1961), in support of that assertion.
*525 Whatever the merit in plaintiffs' asserted right to a recovery in excess of losses derived from their interpretation of the collateral source rule, and we conceive there is none, about which more later, it is plain that Liberty did not regard its medical payments coverage as a source of such double recovery. Plaintiffs admit that their right to medical payments under the Liberty policy is subject to Liberty's right of subrogation with respect thereto, which appears in its policy in the following terms:
In the event of any payment under the Medical Expense Coverage of this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.
Liberty's right to recover medical expenses paid under this coverage is further protected by the following condition:
* * * provided that no such payment [under the Medical Expense Coverage] shall be made unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor, against any insured because of bodily injury arising out of any accident to which the Liability Coverage applies.
This reimbursement provision was apparently designed to avoid subrogation litigation where one of Liberty's insureds is the party liable and where, consequently, Liberty is a participant in either the settlement or in the lawsuit. Although this clause may not, strictly speaking, be applicable in the given context because the tortfeasor on whose account settlement of the liability action was made is not an insured under the Bozzuffi policy, the clause nonetheless clearly manifests Liberty's intention that its policy, the Bozzuffi one, not be a source from which a recipient of medical payments enjoys a recovery in excess of losses, that is, a double recovery for medical *526 expenses. Both clauses clearly contemplate that wherever there exists a financially responsible tortfeasor whose negligence caused the injuries for which medical expenses have been paid, Liberty will be entitled to recoup those payments; only where no such tortfeasor exists, for example in a one-car accident where the driver is the insured, is Liberty deprived of a right of reimbursement.
One of the many problems in this case is that plaintiffs' claim for medical expenses under Liberty's Bozzuffi policy was not made until after settlement of the liability action was achieved, and 3 1/2 years after the accident. Had claim been made prior thereto, the amount paid thereunder would have been recouped because, as we have seen, there was, in fact, a financially responsible tortfeasor, another of Liberty's insureds, whose carrier, Liberty, made payment on account of that tortfeasor's proximately related negligence. Liberty's recovery of such medical expenses paid before settlement would have been achieved, we are sure, by Liberty simply taking credit in connection with the settlement for the amounts previously paid on account of medical expenses. Plaintiffs, in such circumstances, would have been in the same position vis-a-vis Liberty as they are now. We see no reason, in justice or public policy, or in the contract of insurance, why the result should be different simply because plaintiffs lodged their claim after, rather than before, the settlement was achieved.
Hence, giving effect to plaintiffs' admitted right to recover under the medical payment coverage of the Liberty policy and Liberty's admitted right to recover such payments by way of subrogation or by agreement for reimbursement, and carrying out the manifest intent of this coverage that it was not to supply a source for double recovery of medical expenses, and the policy of the law disfavoring such double recoveries[1], particularly in light of current experience *527 with skyrocketing insurance costs, we regard the situation as if Liberty had made payment under this coverage and had recouped such payment by way of subrogation or an agreement for reimbursement. Since both parties' rights have been protected, Liberty has no further liability under its policy. Plaintiffs are in precisely the same position as to their claim against Liberty as they would have been in had the claim for medical payments been asserted and paid before the settlement. They are fully indemnified for the medical expenses incurred within a year from the accident, once but not twice.
We reject as overly technical both Liberty's contentions of its freedom from medical expense liability because of impairment of its right to subrogation and plaintiffs' contention that Liberty had no right to subrogate against one of its own insureds under a separate policy of insurance. Home Ins. Co. v. Pinski Bros., 160 Mont. 219, 500 P.2d 945 (Sup. Ct. 1972). Acceptance of either contention would produce a result at variance with the clear intent of the policy and for no better reason than to provide plaintiffs with double recovery of their medical expenses. As to Liberty's contention, the right to subrogate against one of its own insureds is a right we conceive to be without value; it simply involves moving money from one of Liberty's pockets into another. Although such a procedure may have value for Liberty's internal bookkeeping records indicating which insured should be charged with the loss, we do not regard that objective as the essential purpose for the right. We cannot conceive that Busch v. Home Ins. Co., supra, was intended to absolve a carrier from liability because of impairment of a valueless right. Secondly, Liberty is in no position to assert that its right of subrogation has been impaired by the settlement and the general release evidencing it because it was a full participant in that settlement and had at least as much control over its terms as did plaintiffs. Busch obviously applies *528 only to those situations where an insured, on his own and without any control by the carrier, settles a claim and thus interferes with or forecloses the carrier's valuable right of subrogation.
As to plaintiffs' contention that the collateral source rule affords them a right to double recovery, we conclude that by so contending plaintiffs misconceive the essential justification of that rule. The collateral source rule does not create a right of double recovery in any claimant. It may have that effect, it's true, but the fact that a plaintiff may end up with a double recovery by virtue of the rule does not signal creation of a right thereto. All that the collateral source rule does is to preclude a tortfeasor, that is, one whose fault caused injury, from setting up in mitigation of damages, benefits derived by the injured person from some collateral source. Long v. Landy, supra. No tortfeasor is seeking to do that in this case. Rather, the fact of receipt of benefits by plaintiffs is being set up by insurance carriers under contractual, not tort, liabilities. We see no reason to extend the scope of the collateral source rule beyond its essential justification by precluding those under a contractual obligation, contemplating only a single recovery, from pleading in mitigation or absolution receipt of the same benefits from the tortfeasor or the tortfeasor's carrier. To do so would turn the rule on its head. In the given context we conclude that plaintiffs do not have any right to a double recovery. We only consider whether the nature of the contractual claims asserted will result in a double recovery.
We now turn to plaintiff's claim against GEICO on the merits. GEICO's policy does not contain an express reservation of its right to subrogate with respect to payments made under its coverage for Expenses for Medical Services, Part II of its policy. We reject its contention that it enjoys a common law right of subrogation because of its express reservation of such rights with respect to other portions of the policy. Had GEICO intended to reserve such right with respect to payment of medical expenses under Part II of its *529 policy, it would have expressly reserved such right as it did with respect to liability and property damage payments. In so holding we are only giving effect to the carrier's probable intent as expressed in the policy it drafted. Hence, the GEICO policy differs from Liberty's in the sense that it is not that clear that it did not intend its medical payments coverage to provide a source for a double recovery thereof. We nonetheless conclude that another portion of the policy, more specifically, the "other insurance" clause, serves the same function. That clause provides that "with respect to a * * * non-owned automobile" the medical payments insurance afforded "shall be excess * * * over any other valid and collectible automobile medical payments insurance." The payments sought by plaintiffs are with respect to a nonowned automobile and hence GEICO has not agreed to pay for this loss where payment is derived from another medical payments insurance source; it is only where other medical payments insurance does not exist that GEICO's medical payments coverage comes into effect.
We have held, however, that the Liberty policy on Bozzuffi not only provided valid and collectible insurance, but that it was paid, albeit recouped, through subrogation. That such payments, constructively made, were recouped by means of subrogation, constructively exercised in this case, does not, in our view, render such primary insurance invalid or uncollectible. Hence, GEICO bears no further responsibility with respect to its medical payments coverage.
As to plaintiffs' contention that GEICO's medical payments coverage is concurrent, rather than excess, citing Johnson v. New Jersey Mfrs. Ind. Ins. Co., 69 N.J. Super. 184 (App. Div. 1961), our response is that whether GEICO's coverage is excess or concurrent is a matter which only concerns the two carriers and not plaintiffs. It is by means of "other insurance" clauses that insurance carriers decide among themselves which is to bear the incidence of loss, or whether it is to be shared and in what proportion. Such matters do not concern plaintiffs, and in this case do not even *530 concern defendant. Liberty has been held to have recouped, in contemplation of law, the loss paid in full under its medical payments coverage contained in the Bozzuffi policy. Liberty, therefore, has no claim against GEICO, and GEICO, because it has paid nothing, has no claim against Liberty.
As to plaintiffs' contention that the default judgment in their favor against GEICO should not have been set aside because of GEICO's delay in making its application, we have concluded that the trial judge, preferring a resolution of the issues on their merits, exercised his discretion in the matter. On balance, we have concluded that this discretion was not abused. Plaintiffs evidenced no immediate need for the payments sought. They had already recovered their damages from Liberty before the claim was made under the GEICO policy. At issue here is whether plaintiffs may recover twice for their medical expenses. We cannot say that in these circumstances the delay was crucial.
Affirmed.
NOTES
[1] Theobald v. Angelos, 44 N.J. 228, 239 (1965); Daily v. Somberg, 28 N.J. 372, 386 (1958); Brandstein v. Ironbound Transp. Co., 112 N.J.L. 585, 586-587 (E. & A. 1934); Gelsmine v. Vignale, 11 N.J. Super. 481, 486 (App. Div. 1951).