
Frederick P. MAYNARD, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. S–6319.

Supreme Court of Alaska.

Sept. 29, 1995.

Frank J. Schlehofer, Law Office of William G. Azar, Anchorage, for appellant.

David S. Carter, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Earl M. Sutherland and William R. Hickman, Reed McClure, Seattle, Washington, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal presents a pure question of law: May an insurance company seek reimbursement for medical expenses paid to its insured under his policy when it also insures the tortfeasor and the insured brings an action against the tortfeasor seeking damages for the same medical expenses?

## I. FACTS AND PROCEEDINGS

On February 6, 1991, Frederick Maynard and Glenn Madison were involved in an automobile accident. Both were insured by State Farm Mutual Automobile Insurance Co. (State Farm).

State Farm paid Maynard's medical bills totalling $5,212 pursuant to the Medical Payments Coverage provision contained in his insurance policy. An endorsement to the insurance policy expressly reserved State Farm's right to be reimbursed for this amount if Maynard received "any subsequent recovery for bodily injury from a liable party or such party's insurance."

Maynard filed suit against Madison for damages arising out of the accident, including his medical expenses. Maynard also filed a class action suit against State Farm in which he characterized the reimbursement clause as a subrogation provision and, relying on Alaska case law which holds that an insurance company cannot subrogate against its own insured, sought a declaratory judgment "that State Farm insurance company has no right of subrogation for medical payments against any party who is also insured by them."

State Farm moved for judgment on the pleadings in Maynard's class action suit pursuant to Alaska Civil Rule 12(c). The superior court considered matters outside the pleadings and treated the motion as a Rule 56 motion for summary judgment. See Alaska Civil Rule 12(c). The superior court granted summary judgment in favor of State Farm [1] and Maynard now appeals.

■ After this appeal was filed, Maynard settled his separate suit with Madison. The settlement was in the amount of $12,500 and "did not include compensation for any medical expenses which State Farm earlier had paid to ... Maynard under the medical payments coverage afforded him pursuant to a separate State Farm policy." However, the settlement agreement expressly reserved "Maynard's rights enumerated in Maynard v. State Farm Auto Insurance Co., 3AN–93–6074 Civ." [2]

## II. STANDARD OF REVIEW

This appeal requires us to interpret an insurance contract. Where no facts are in dispute, "interpretation of the words of the contract is treated in the same manner as questions of law." National Bank of Alaska v. J.B.L. & K. of Alaska Inc., 546 P.2d 579, 586 (Alaska 1976). This court's "duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

---

1. Summary judgment was granted in favor of State Farm on Maynard's class action before the class was certified.

2. State Farm argues that settlement of the Maynard–Madison litigation renders this appeal moot. First, State Farm argues that because the settlement agreement was structured so that none of the compensation was for medical expenses, it may not seek reimbursement. Second, State Farm notes that Maynard has already been made whole for all injuries arising out of the accident. He has received compensation for his medical expenses through his own Medical Payments Coverage, and compensation for all other damages through his settlement with Madison.

A case is moot if the party bringing the action would not be entitled to any relief even if they prevail. See Kleven v. Yukon–Koyukuk School District, 853 P.2d 518, 523 & n. 8 (Alaska 1993). In the present case, the settlement agreement was amended to reserve "Maynard's rights enumerated in Maynard v. State Farm Auto Insurance Co., 3AN–93–6074 Civ." We interpret this language as meaning that if he prevails on the merits of this appeal, Maynard may pursue his claim for medical expenses against Madison free from State Farm's claims for reimbursement. Thus, we conclude this case is not moot.

When interpreting an insurance contract, we have noted:

> An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language. It is not required that ambiguities be found in the policy language as a condition precedent for such construction.
>
> . . . .
>
> To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977) (footnotes and citations omitted). Further, "[w]here an insurance company limits the coverage of a policy issued by it in plain language, this court recognizes that restriction." *Insurance Co. of N. Am. v. State Farm Mut. Auto. Ins. Co.*, 663 P.2d 953, 955 (Alaska 1983) (citations omitted).

## III. DISCUSSION

### A. Estoppel

Maynard initially contends that State Farm is estopped from arguing that its recovery rights under the policy are based on reimbursement rather than subrogation. Maynard then reasons that because this court has held that an insurer may not subrogate against its own insured, application of the principles of estoppel bar State Farm from seeking recovery of the amount it paid to him under his policy. *See Graham v. Rockman*, 504 P.2d 1351, 1356 (Alaska 1972). Maynard does not state on which type of estoppel his argument is premised. Howev-

er, we conclude that neither equitable nor quasi estoppel bars State Farm from arguing that its rights are based on reimbursement rather than subrogation.

We discussed the necessary elements of both equitable and quasi estoppel in *Wright v. State*, 824 P.2d 718 (Alaska 1992):

> The elements of equitable estoppel are "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Jamison [v. Consolidated Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978).] Neither ignorance nor reliance, however, are essential elements of quasi estoppel. *Dressel v. Weeks*, 779 P.2d 324, 331 (Alaska 1989). Quasi estoppel appeals to the conscience of the court and applies where "the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable." *Jamison*, 576 P.2d at 102. This court has instructed trial courts to consider the following factors in determining whether the doctrine of quasi estoppel is applicable: "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts." *Id.* at 103.

*Wright*, 824 P.2d at 721 (alteration in original).

■ In support, Maynard relies primarily on a letter from a State Farm claims specialist to his attorney.[3] The letter proposed adding Maynard's claim against Madison to an upcoming settlement conference, outlined the claims specialist's preliminary assessment of the claim, and stated, "I am on notice of [State Farm's] medical payments subrogation interest."[4]

---

3. Maynard also relies on a letter from Joe Huddleston, an attorney representing State Farm in an unrelated action brought by another claimant, Dale Johnson. Although this letter may be evidence of a course of dealing on the part of State Farm, it does not change our estoppel analysis.

4. Maynard also cites *Alaska Pacific Assurance Co. v. Collins*, 794 P.2d 936 (Alaska 1990), for the proposition that in insurance litigation, an insured need not demonstrate all of the typical elements of estoppel but need only show that the insurer took inconsistent positions in the litigation. However, *Collins* is more properly characterized as dealing with the issue of waiver. In that case, the insurer consistently maintained in its summary judgment briefing, testimony at trial, and argument over proposed jury instruc-

However, Maynard has not alleged any action he took or did not take in reliance on this statement. Thus, he has failed to demonstrate one of the necessary elements of equitable estoppel.

■ Nor do we believe that it would be unconscionable to allow State Farm to argue that its rights were premised on reimbursement. Maynard argues that State Farm initially asserted that its recovery should be based on subrogation so that it could avoid having to pay part of Maynard's attorney's fees. Then, after Maynard filed his class action suit and State Farm realized the limits of subrogation, it switched its theory to reimbursement. However, the letter at issue was written early in the litigation, and did not concern attorney's fees. Thus, Maynard's argument regarding State Farm's intent in writing this letter is no more than speculation. We also note that State Farm's argument before the trial court concerning attorney's fees appears to be applicable whether premised on reimbursement or subrogation.[5] We therefore conclude that State Farm's assertion of an inconsistent position is not unconscionable, and that quasi estoppel should not bar State Farm from altering its position.

B. *The Language of Maynard's Policy*

■ The pertinent provisions of the insurance contract are contained in an endorsement amending the policy's Medical Payments Coverage. They provide as follows:

**When Someone May Be Legally Liable For the Bodily Injury**

1. If the injured **person** has been paid damages for the **bodily injury** by or on behalf of the liable party in an amount:

   a. less than the injured **person's** total medical expenses, the most we will pay under this coverage is the lesser of:

      (1) the limit of liability of this coverage, or

      (2) the amount by which the total reasonable and necessary medical expenses exceed the total amount paid by or on behalf of all parties liable for the **bodily injury**;

   b. equal to or greater than the total reasonable and necessary medical expenses incurred by the injured **person,** we owe nothing under this coverage.

2. When we pay medical expenses under this coverage, we are entitled to be paid out of any subsequent recovery for **bodily injury** from a liable party or such party's insurer the lesser of:

   a. what we have paid; or

   b. the amount by which the sum of the total recovery for **bodily injury** from all liable parties and what we have paid under this coverage exceeds the total amount of reasonable and necessary medical expenses the injured **person** incurred.

The injured **person** shall:

   a. execute any legal papers we need;

   b. when we ask, take action through our representative to seek a recovery;

   c. not hurt our rights to recover;

   d. not make claim to that portion of the recovery that we are entitled to be paid; and

   e. answer truthfully all questions that we may ask.

tions, that only a particular exclusion applied, and on only one occasion suggested that any other exclusion might apply. *Id.* at 942. It was only on appeal that the insurer sought to raise a second exclusion which might limit coverage. We therefore concluded that the insurer had waived this defense. In contrast, we do not consider a single letter written by a claims adjustor early in the litigation sufficient to constitute waiver.

5. Maynard's argument that he would be entitled to partial reimbursement for attorney's fees if he recovered medical expenses in his suit against

Madison is based on *Cooper v. Argonaut Insurance Co.,* 556 P.2d 525 (Alaska 1976). In *Cooper,* we held that an insurer must pay its pro rata share of attorney's fees when it benefits from a lawsuit filed by its insured against a third party. State Farm argued before the trial court that because any reimbursement which it might receive as a result would ultimately come from itself, it would not be benefitted by Maynard pursuing this action. This argument would hold true whether State Farm's theory was based on subrogation or reimbursement.

We will not seek reimbursement from payments received from a liable party or such party's insurer by a **person** who has complied with all of these requirements.

This language conclusively bars the double recovery which Maynard seeks in this case. Section one generally provides that State Farm will not pay any expenses for which the claimant has already been compensated. Section two generally states that State Farm is entitled to reimbursement to the extent that the claimant obtains recovery from a liable third party for medical expenses which have been paid for under the Medical Payments Coverage portion of the policy.[6] Also of significance is the absence of any policy language which suggests that these provisions do not apply when State Farm insures both the claimant and the third-party tortfeasor. The fact that State Farm could administratively enforce its rights through a set-off from the subsequent judgment against the tortfeasor rather than through a separate reimbursement action against the insured does not change our analysis. Thus, by denying Maynard a double recovery for his medical expenses, we are merely giving effect to the unambiguous language of the insurance contract.

## C. Public Policy

▮▮ Maynard argues that even if the wording of the insurance contract supports State Farm's interpretation, State Farm should be prohibited from seeking reimbursement as a matter of public policy.

### 1. Conflict of interest

Maynard contends that allowing reimbursement would create a conflict of interest for the insurer which is untenable in light of the fiduciary obligations which it owes to its insured. He cites *Baugh–Belarde Construction Co. v. College Utilities Corp.*, 561 P.2d 1211 (Alaska 1977), where this court enumerated the policies underlying the rule prohibiting an insurer from subrogating against its own insured. In that case, this court quoted

at length from a Montana Supreme Court opinion:

> To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate ... basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

*Id.* at 1214–15 (quoting *Home Ins. Co. v. Pinski Bros., Inc.*, 160 Mont. 219, 500 P.2d 945, 949 (1972)).

The cases giving rise to the rule prohibiting subrogation against one's own insured all involve situations in which the insurer paid out on a loss to its insured and then sought to hold a second coinsured party under the same insurance contract liable for the loss. *See Atlas Assurance Co. of America v. Mistic*, 822 P.2d 897 (Alaska 1991) (husband and wife); *Alaska Ins. Co. v. RCA Alaska Communications, Inc.*, 623 P.2d 1216 (Alaska 1981) (landlord and tenant); *Baugh–Belarde Constr. Co. v. College Utils. Corp.*, 561 P.2d 1211 (Alaska 1977) (general contractor and subcontractor); *Graham v. Rockman*, 504 P.2d 1351 (Alaska 1972) (bailor and bailee). Here, in contrast, the two insureds have unrelated insurance contracts. Thus, we must determine whether the differences between these two factual contexts compel a different result.

Maynard argues that the same conflict of interest concerns exist in this case. In support, he points to the fact that he was required to submit to an independent medical

---

**6.** This language is necessary because we held in *Tolan v. ERA Helicopters, Inc.*, 699 P.2d 1265, 1267 (Alaska 1985), that an insured who has received payment under an insurance policy may still bring a claim against the tortfeasor for the covered loss.

examination (IME) as a condition of receiving his Medical Payments Coverage. Then, because he failed to object, the results of this examination were turned over to the claims adjustor who was handling the defense of his claim against Madison.[7] The claims adjustor proceeded to use the exam results to try to obtain a favorable settlement for State Farm.

Although some conflict concerns do exist in the IME situation, we conclude that they are not as great as in the coinsureds setting. In both cases, the insured party has a duty to assist the insurance company in its investigation of the loss. However, differences in the nature of the coverage necessarily define the scope of the investigation. Because the insured is entitled to Medical Payments Coverage no matter who is at fault, the only issues in the context of an IME are the extent of the injury and the reasonableness of the medical expenses.[8] In contrast, where the insurance company carries out an investigation of a claim under a general liability policy, the scope of the inquiry will likely be much broader. Thus, there is greater danger that information discovered as a result of the coinsured's duty to cooperate will be used to establish liability against him.

Regarding the more general concerns about the insurer's fiduciary duties to its insured, State Farm notes:

The right to reimbursement provision is a contractual setoff distinct from a subrogation action. Enforcement of the provision is not the functional equivalent to suit against one to whom the insurer owes an indemnity obligation.

In other words, where both the claimant and tortfeasor are insured by the same company, this provision does not give rise to a cause of action initiated by the insurance company against its insured. Instead, it is an automatic setoff which occurs only as a result of the insured seeking damages which he has already been compensated for under his own policy.

Finally, to the extent that an insured party is disadvantaged with respect to his nonmedical claims,[9] simply permitting double recovery of medical expenses is a poor means to compensate for this harm.[10] Such a rule would make the insured's recovery for these losses dependent on the fortuity of how great or small his medical expenses were, rather than on the actual harm resulting from the insurance company's breach of its fiduciary duty.

### 2.  *Windfall*

Maynard argues that allowing State Farm to seek reimbursement gives it a windfall due to the way in which insurance companies calculate their premiums. In *Cooper v. Ar-*

7.  This practice, known as "backdooring," was held to be a violation of the insurer's fiduciary duty to its insured by a California appeals court. *Betts v. Allstate Ins. Co.,* 154 Cal.App.3d 688, 201 Cal.Rptr. 528, 534–35 (1984). However, in *Betts* the insured expressly refused to give authorization to Allstate to share her files. Here, the letter demanding that Maynard submit to a medical examination put the insured on notice of its practice to share information unless Maynard submitted a written request that it not be done.

8.  We acknowledge the risk that an insured party will inadvertently make a statement during the course of the IME which could affect recovery in a later action. However, this risk is relatively small because determining liability is not the purpose of the IME.

We note that despite Maynard's discussion of several hypothetical instances in which an insured might be prejudiced, in the present case, the claims adjustor used nothing more than the doctor's medical evaluation in his settlement negotiations. Maynard was therefore placed in no

worse position than had he submitted to a medical exam pursuant to Alaska Civil Rule 35. To the extent he disagreed with the doctor's prognosis, he would be entitled to have his own doctor evaluate his condition and testify at trial.

9.  For example, an insurance company might use information it received as a result of the IME regarding the extent of the injuries in order to assess the validity of damage claims for pain and suffering.

10.  We note that the harm which results, if any, is not from the insurer seeking reimbursement. It arises from the information which is gained by the insurer when the insured initially seeks his Medical Payments Coverage. As such, denying reimbursement will not "solve" the potential conflict which arises from the receipt of this information. That is, even if the insured is allowed a double recovery for his medical expenses, the insurer will still have the IME results to use in defending or settling the insured's nonmedical claims.

*gonaut Insurance Cos.,* 556 P.2d 525, 527 (Alaska 1976), we acknowledged that in determining actuarial risk—and therefore insurance premiums—insurance companies do not consider the possibility of recovery of the loss from third parties because of the difficulty of determining the mathematical probability of such recovery. Thus, when an insurer does recover a loss from a liable third party it receives a windfall. Here, where the insurer insures both parties in a car accident, the windfall is certain. This is because the insurance company has collected premiums from both parties but only pays out once for the insured loss. Maynard concludes, "Given the potential for abuses and the conflicts of interest when State Farm insures both parties to a claim, equity favors having the unanticipated windfall fall to the injured insured." Finally, Maynard argues that although he admittedly would receive a double recovery for his medical expenses, this court will countenance such a recovery where public policy warrants. As an example, he cites the collateral source rule, which states that "a tort-feasor is not entitled to have his liability reduced merely because [the] plaintiff was fortunate to have received compensation for his injuries or expenses from a collateral source." [11] *Tolan,* 699 P.2d at 1267 (quoting *Ridgeway v. North Star Terminal and Stevedoring Co.,* 378 P.2d 647, 650 (Alaska 1963)).

The superior court below rejected this argument, and we reject it as well. The medical payments provision performs numerous important functions. It permits speedy reimbursement for medical expenses without regard to fault; it assures coverage when the insured is involved in an accident with an uninsured or underinsured driver; and in situations where both parties to an accident are insured by the same insurer it sometimes eliminates the need for costly litigation to determine fault. Although there may be some merit to the argument that insurance companies receive a small windfall,[12] as noted above, the language of the insurance policy

unambiguously precludes double recovery. Further, both this court and courts from other states generally disfavor double recoveries unless strong policies warrant. *See, e.g., Murray v. Feight,* 741 P.2d 1148, 1159–60 (Alaska 1987); *Cozzi v. Government Employees Ins. Co.,* 154 N.J.Super. 519, 381 A.2d 1235, 1240 (1977). We conclude that no such policies exist in this case because the windfall and any conflict of interest which arises out of the fact that State Farm insured both Maynard and Madison are minimal.

## IV. CONCLUSION

Neither the insurance contract language nor public policy prohibits State Farm from seeking reimbursement for the medical expenses it paid under Maynard's Medical Payments Coverage if he proceeds with his action against Madison. We therefore AFFIRM the superior court's grant of summary judgment in favor of State Farm.

---

**11.** This rule is based on the culpability of the tortfeasor, and, as such, is not applicable to compensation payments made by an insurer. *Cozzi v. Government Employees Ins. Co.,* 154 N.J.Super. 519, 381 A.2d 1235, 1240 (1977).

**12.** State Farm notes, however, that Maynard presented no evidence that insurance companies do not factor the chance of recovery into their premium rates.