### H. The Provost Was Authorized To Deny Employment to Sengupta.

■ Finally, Sengupta argues that the UAF provost is not authorized to review the "circumstances of termination of a tenured Professor." Sengupta's contention is without merit. UAF vests the power of appointment in "the chancellor or the chancellor's designee." No university policy or other legal principle prevents the provost from serving as the chancellor's designee merely because the applicant was previously involved in a contentious termination for cause. In rejecting Sengupta's 2003 rehire application, the provost, like every other official at UAF, was entitled to rely on the finality of the termination proceeding and therefore to assume that the legal issues surrounding Sengupta's termination had long-since been resolved in favor of UAF.

### IV. CONCLUSION

We therefore AFFIRM the judgment below.

MATTHEWS, Justice, not participating.

**GILBERT M., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–11364.

Supreme Court of Alaska.

July 21, 2006.

---

Nancy Shaw, Anchorage, for Appellant.

Michael G. Hotchkin, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee State of Alaska.

David S. Case, Landye Bennett Blumstein, LLP, Anchorage, for Appellee Chitina Traditional Indian Village Council.

Jill C. Wittenbrader, Assistant Public Advocate, and Joshua P. Fink, Public Advocate, Office of Public Advocacy, Anchorage, Guardian Ad Litem.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Gilbert M. appeals the termination of Jan M.'s parental rights to her daughter—Gilbert's granddaughter—Belinda T.[1] The state took Belinda from Gilbert's home in 2000 when he was arrested on felony gun and drug charges. Jan has not appealed the termination of her parental rights and Belinda has since been adopted. Gilbert has been convicted of numerous felonies and is incarcerated for the foreseeable future. Gilbert appeals the termination of Jan's rights, asserting that the superior court applied the wrong evidentiary standard in assessing the state's active efforts and that the court erred in failing to obtain testimony from an expert in Native culture. Gilbert also challenges the superior court's finding that harm would result if Belinda were to be placed with him and the superior court's refusal to order Belinda's adoptive parents to provide Gilbert visitation. Because Gilbert does not have standing to appeal Jan's rights, and because the claims which he has standing to appeal are rendered moot by his lengthy incarceration, we affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Belinda T. was born in June 1996 to Jan M. and Henry T. Henry's whereabouts are unknown and state efforts to locate him have been unsuccessful. Jan and Belinda are affiliated with the Chitina Traditional Indian Village and Belinda is an Indian child within the meaning of the Indian Child Welfare Act (ICWA).[2]

The state received three reports of harm to Belinda between 1998 and 2000. These reports indicated Jan was drinking heavily and using both crack cocaine and marijuana. These substance abuse problems interfered with Jan's ability to be Belinda's caretaker. Until 2000 Jan often left Belinda in the care of Gilbert M., Jan's father.

On September 23, 2000 the Anchorage Police Department raided Gilbert's home and arrested him. According to the petition to terminate parental rights, "Police observed a loaded pistol and bullets in open view at the residence, and a heavy gun case was removed from under [Belinda]'s bed. Police also found multiple bags of marijuana, as well as money believed to be from the sale of drugs." Following a jury trial, Gilbert was convicted of fourteen felonies and was sentenced to a presumptive twenty-five-year prison term; Gilbert faces another six years of imprisonment in a different case. Gilbert is currently sixty-six years old; he will likely be incarcerated for a lengthy period and will almost certainly be in prison when Belinda reaches the age of eighteen.[3]

The state took Belinda into emergency custody at the time of Gilbert's arrest. Jan apparently was living in Nome at the time. In September 2000 the Division of Family and Youth Services (DFYS or the division) filed an emergency petition for adjudication that Belinda was in need of aid and for emergency placement. Superior Court Judge Peter A. Michalski granted the petition in October 2000 and temporarily placed Belinda in state custody. Gilbert participated in the custody hearing; the superior court master stated that "[Gilbert M.] is an Indian custodian and thereby entitled to party status" and the court's order referred to Gilbert as the "maternal grandfather/Indian custodian." [4]

---

1. We have used pseudonyms throughout this opinion to protect the privacy of family members.

2. 25 U.S.C. § 1903(4) (2000) (defining Indian child for purposes of ICWA as "any unmarried person who is under the age of eighteen and is either a) a member of an Indian tribe or b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

3. Gilbert's conviction and sentence are not part of the trial court record in this case but we may take judicial notice of them under Alaska Evidence Rules 201 and 203. Moreover, the criminal judgment was included in the appellees' motion to dismiss Gilbert's appeal as moot.

4. 25 U.S.C. § 1903(6) (2000) defines Indian custodian as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom tempo-

On February 14, 2001 the parties to the custody proceeding entered a stipulation before Superior Court Judge Sharon Gleason to the effect that Belinda was a child in need of aid under AS 47.10.011(6)[5] and (10)[6] and that return home was not appropriate at the time, pending Jan's progress on her case plan. The stipulation included the statement, as part of the basis for Belinda being a child in need of aid, that "[t]he Indian custodian is currently facing criminal prosecution and is not an appropriate caretaker for the child at this time." Gilbert signed the stipulation, as did Jan and the guardian ad litem.

In the meantime, Jan began work on her case plan. She signed the plan on October 10, 2000. It provided that Jan would pursue alcoholism treatment, would follow mental health treatment recommendations, and would follow social workers' recommendations on providing for Belinda's safety. Jan entered a detox facility on January 19, 2001 but was discharged on February 27 for assaulting another patient. She entered another facility on May 15, 2001 but left two weeks later against treatment advice.

The guardian ad litem (GAL) for Belinda filed a disposition report on May 11, 2001. The report recommended that Belinda continue in foster care while Jan worked on her case plan and that "once the mother is settled into residential treatment, the parties may consider placement of [Belinda] with the mother." As to Gilbert, the GAL reported

> [Gilbert M.] is an Indian Custodian and expressed a desire to work a case plan.... The GAL assumes that Mr. [M.] is focusing on resolving his criminal charges at this point.... In the event that [Jan] does not complete treatment or relapses, it would be in [Belinda's] best interests for [Gilbert M.] to work a case plan and be

considered as a future placement for [Belinda].

Jan successfully completed alcohol treatment from October 16, 2001 to November 21, 2001. As a result, DFYS decided in January 2002 to proceed toward reunification, placing Belinda in a foster home in Anchorage. In May 2002 Jan entered an outpatient aftercare program. She was discharged against treatment advice on July 25, 2002. Jan's attendance at the program was sporadic. At about the same time, in June 2002, Jan apparently relapsed into alcoholism and fell out of contact with DFYS.

As a result of Jan's non-compliance with the case plan, the superior court in July 2002 adopted a permanency plan of adoption. The court's order stated that Jan had "not made substantial progress to remedy her conduct or the conditions in the home which caused the child to be a child in need of aid." Referring to Gilbert, it added, "The Indian custodian is incarcerated and is not likely to be released in the foreseeable future."

DFYS social worker Kimberly Uhrich developed a new case plan in October 2002, which Jan signed. This plan had similar elements to the 2000 plan but included adoption as a concurrent goal. Jan had to be hospitalized for an inhalant overdose in October 2002, after which Uhrich arranged for Jan to be admitted to an inpatient treatment program in Fairbanks. Jan left that program after a week. Belinda was adopted by a tribally-approved family in October 2005.

### B. Proceedings

The division filed a termination petition against both parents on August 28, 2002. Judge Gleason heard evidence against Henry T., Belinda's father, on Feburary 13, 2003, and ordered his parental rights terminated—

---

rary physical care, custody, and control has been transferred by the parent of such child."

**5.** AS 47.10.011(6) provides that a child is in need of aid if the court finds by a preponderance of the evidence that:

> the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, guardian, or custodian or by

the failure of the parent, guardian, or custodian to supervise the child adequately[.]

**6.** AS 47.10.011(10) provides, in relevant part, that a child is in need of aid if:

> the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child.

effective February 13—in an order of November 10, 2003. At trial, social worker Kim Uhrich testified that efforts to locate Henry had been utterly unsuccessful and that further efforts had no likelihood of finding him.

At the trial setting conference on March 12, 2003 the court noted that Gilbert's "rights as an Indian custodian" were unclear and ordered briefing on the matter. No briefing appears in the record. Though he continued to participate in the proceedings, Gilbert was never referred to as the "Indian custodian" again. His attorney noted at trial that he was unsure whether Gilbert could make any stipulations regarding Belinda "since the petition ... is against the daughter." The state's attorney stated his belief that the court could enter an order on Belinda's status "without the grandfather."

The superior court held a trial on termination of Jan's parental rights on May 20 and 27, 2003. Gilbert participated telephonically in the proceedings (as he was incarcerated at the time) and was represented by court-appointed counsel. The court issued an order on the termination petition on July 18, 2003, holding that (1) DFYS had demonstrated by clear and convincing evidence that Belinda was a child in need of aid under AS 47.10.011(10) and that Jan had failed to remedy the conditions that caused Belinda to be in need of aid; [7] (2) that the division had proved by a preponderance of the evidence that active efforts to prevent the breakup of the family had been made, at least through May 2003; [8] and (3) that termination of Jan's parental rights was in Belinda's best interests. [9]

The court ruled, however, that the division had not established beyond a reasonable doubt that placing Belinda in Jan's custody was likely to result in serious physical or emotional damage. The court was concerned that the state's expert, Dr. Richard Lazur, had not interviewed Jan or Belinda and that he had discounted the bond between Jan and Belinda, given "uncontradicted" testimony

that "[Belinda] loves Ms. [M.] and would very much like for Ms. [M.] to remain in her life." The court deferred the petition for ninety days.

The court heard additional evidence on November 19, 2003 which satisfied its earlier concerns. The court issued oral findings on November 21, 2003 and a written order on January 28, 2004 terminating Jan's parental rights effective November 21, 2003. The court's termination order incorporated the findings issued after the first termination hearing. The order found that "the state has proved beyond a reasonable doubt ... that continued custody of [Belinda] by [Jan M.] or [Gilbert M.] is likely to result in serious emotional or physical damage to [Belinda]." The court also held that the state had demonstrated active efforts for the May 2003–November 2003 period and that "it remains contrary to [Belinda]'s welfare to be returned to the custody of her mother or her Indian custodian."

Belinda was adopted on October 28, 2005. The adoption decree found that the adoptive parents "wish to maintain the child's continued contact with her Alaska Native Culture" and that they "have demonstrated a willingness and ability to maintain the child's contact with her grandfather." In the adoption hearing Gilbert requested that the court order "visitation as permitted under AS 25.23.103(c) of no less than one personal visit or one fifteen minute phone call per month." The superior court held that the adoptive parents "shall have the sole discretion to determine the frequency and circumstances of visitation that are reasonable and in the child's best interests. It is not necessary *and* it is not in the child's best interests to enter a specific order defining the terms of visitation in the adoption decree." (Emphasis in original.)

Gilbert and the Chitina Village both initially appealed the termination of Jan's rights; the village had intervened in the custody proceedings as provided by ICWA.[10] Jan did

---

7.  *See* AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A).

8.  *See* former CINA Rule 18(c)(2).

9.  *See* AS 47.10.088(c).

10.  *See* 25 U.S.C. § 1911(c) (2000) ("In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, ... the Indian child's tribe shall have a

not appeal the termination. Gilbert's and Chitina's appeals were stayed pending tribal approval of the adoptive placement; Gilbert's appointed counsel reported that "it appears likely that [Belinda]'s adoption by the tribally preferred parents will moot the appeal issues of both [Chitina] and [Gilbert]." Indeed, after Belinda was placed with her adoptive parents, Chitina abandoned its appeal, which we dismissed *sua sponte* for want of prosecution. Chitina is participating in this case as an appellee.

Gilbert appeals from the termination order. He argues that the United States Constitution requires that the state prove all elements of its termination case—including whether the state made active efforts to prevent the breakup of his family—by clear and convincing evidence, and thus that the superior court erred when it evaluated the state's efforts under a preponderance standard. Gilbert argues that the state's efforts would not meet this heightened evidentiary burden. Second, Gilbert argues that the superior court erred in crediting the state's expert and in not requiring that the state present testimony from an expert on tribal childrearing practices. Finally, Gilbert challenges the superior court's finding that placing Belinda with him would result in harm to Belinda.

## III. STANDARD OF REVIEW

We review factual findings of the trial court for clear error, which exists when "our review of the record leaves us with the definite and firm conviction that the superior court has made a mistake."[11] Whether the

state has complied with the active efforts requirement of ICWA is a mixed question of law and fact.[12] We use our independent judgment in deciding questions of law, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[13] It is a question of law whether the superior court's findings are consistent with child-in-need-of-aid rules and statutes.[14] Threshold questions such as mootness, standing, and ripeness—as matters of judicial policy—are all questions of law.[15] We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party.[16]

## IV. DISCUSSION

### A. Gilbert Does Not Have Standing To Appeal the Termination.

Before we consider the merits of Gilbert's appeal we must determine whether he has standing to bring the appeal. The "basic requirement" for standing in Alaska courts "is adversity."[17] The "plaintiff must have an interest adversely affected by the conduct complained of."[18] This requirement is sometimes referred to as the "interest-injury" test.[19] "Standing in our state courts is not a constitutional doctrine; rather, it is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[20] Neither the interest nor the injury asserted need be great; "an identifiable trifle is enough for standing to fight out a question of principle."[21]

---

right to intervene at any point in the proceeding.").

**11.** *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207–08 (Alaska 2000).

**12.** *N.A. v. State, Dept. of Family & Youth Servs.*, 19 P.3d 597, 600–01 (Alaska 2001); *A.A. v. State, Dept. of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999).

**13.** *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**14.** *Jeff A.C., Jr. v. State*, 117 P.3d 697, 702 (Alaska 2005).

**15.** *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005); *Ulmer v. Alaska*

*Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001).

**16.** *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1269 (Alaska 2001).

**17.** *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987).

**18.** *Id.*

**19.** *Id.*

**20.** *Id.*

**21.** *Wagstaff v. Superior Court, Family Court Div.*, 535 P.2d 1220, 1225 n. 7 (Alaska 1975) (quoting

### 1. Gilbert does not have standing to assert Jan's rights.

■ We have not fully aired the question of the circumstances in which a party may raise the rights of a third person. In *Peterson v. Ek*,[22] a breach of contract suit, we noted that Peterson lacked standing to assert the claim of a third party who had loaned supplies to Peterson and which Ek appropriated.[23] Peterson alleged that Ek misappropriated "an anchor, line, and chain" that Peterson's friend Greg Dockery had loaned to Peterson.[24] We noted that "[e]ven if Ek did misappropriate these items, Peterson does not have standing to assert the claim of a third party."[25] We cited to the following passage from *Moore v. State*: "Standing questions are limited to whether the litigant is a 'proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.'"[26] We have also held that a party generally does not have standing to assert the federal constitutional rights of another.[27] We have, however, "allowed third party standing where a special relationship exists between the plaintiff and the third party."[28] Parents, for example, may assert the rights of their minor children.[29] No such special relationship exists between Gilbert and Jan. Gilbert is Jan's father, but she is not a minor and there has been no allegation that Jan is unable to assert her rights. She has instead chosen not to assert them.

Gilbert argues that he has standing because he was allowed to intervene in the proceedings below and because the court below issued findings declaring that continuing custody with Gilbert would cause harm to Belinda. Aside from these findings, Gilbert has no interest directly affected by the termination. As the state argues, "his claims belong to [Jan]." Gilbert claims that his "relationship with the child was severed" by the termination order, but that is not the case. Gilbert retains some visitation rights subject to the discretion of the adoptive parents.[30] The court took the relationship between Gilbert and Belinda into account, expressing concern that a previous foster family "unilaterally cut off ... contact between Mr. [M.] and his granddaughter."

Furthermore, Gilbert's participation in the proceedings below was based chiefly on his status as Belinda's grandfather rather than as her Indian custodian. His rights, if any, as Indian custodian were not at issue in the proceeding. The court did not feel that Gilbert had enough at stake to be entitled to participate personally, and allowed him to participate only telephonically, stating "I'm not inclined to sign a transport order" in response to the suggestion that he attend in person. At the March 12, 2003 trial setting conference, the court noted that Gilbert's "rights as an Indian custodian" were unclear and ordered briefing on the matter. Gilbert was never referred to as the "Indian custodian" again and no briefing appears in the

Kenneth Culp Davis, *Standing: Taxpayers and Others*, 35 U. CHI. L.REV. 601, 613 (1968)).

22. 93 P.3d 458 (Alaska 2004).

23. *Id.* at 464 n. 10.

24. *Id.*

25. *Id.*

26. *Moore v. State*, 553 P.2d 8, 23–24 n. 25 (Alaska 1976) (quoting *Flast v. Cohen*, 392 U.S. 83, 100–01, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). *See also Scammon Bay Ass'n, Inc. v. Ulak*, 126 P.3d 138, 142–43 (Alaska 2005) (citing *Graham v. City of Anchorage*, 364 P.2d 57, 59 (Alaska 1961)) (failed intervenor has standing only to appeal denial of intervention); *Austin v. Fulton Ins. Co.*, 498 P.2d 702, 705 (Alaska 1972) (insurer could not appeal from summary judgment granted to insurance agent against insured).

27. *Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 475 n. 20 (Alaska 1977). A party may, however, assert another's constitutional rights if the other is unable. *Cf. Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

28. *State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Const., Inc.*, 787 P.2d 624, 630 n. 9 (Alaska 1989).

29. *Bonjour v. Bonjour*, 592 P.2d 1233, 1241 n. 15 (Alaska 1979).

30. *Cf. Troxel v. Granville*, 530 U.S. 57, 66–67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (imposing grandparent visitation against wishes of parents violates parents' liberty interest in care and upbringing of their children).

record. His attorney noted at trial that he was unsure whether Gilbert could make any stipulations regarding Belinda "since the petition ... is against the daughter." Gilbert's rights were not changed by the termination proceeding and he has no basis to challenge the termination of Jan's rights.

### 2. ICWA does not grant Gilbert standing.

■ Gilbert also argues that ICWA grants him standing. Section 1911(c) of ICWA provides: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." If Gilbert is Belinda's Indian custodian, then it seems he would have a right to appeal the termination. As we explain below, however, since his incarceration Gilbert no longer has any basis to claim to be Belinda's Indian custodian; also, the superior court never found him to be the Indian custodian even before he was incarcerated. Gilbert thus is not granted standing to appeal by ICWA.[31]

Two additional factors provide support for our decision to decline to reach the substantive issues of Gilbert's appeal. First is the best interests of the child. Belinda is nine years old and has just been adopted by a tribally-approved family who "wish to maintain the child's continued contact with her Alaska Native Culture" and who "have demonstrated a willingness and ability to maintain the child's contact with her grandfather." To upset this adoption on the basis of Gilbert's complaints would not be in Belinda's best interests because it would return her to legal limbo and could shatter the stability she has finally achieved.

Moreover, Chitina acknowledges that reaching the merits of Gilbert's challenges to the standard of proof and the adequacy of expert testimony would result in an advisory opinion. It characterizes the appeal as raising "two important issues of significance for future cases" and argues that the "unique circumstances of this case mandate" that our decision would "be applied prospectively only." A decision that would have no effect on the parties before the court is purely advisory and therefore the appeal is nonjusticiable.

Since Gilbert does not have standing to appeal the termination—whether by virtue of his relationship to Belinda, his purported status as an Indian custodian, or by his relationship to Jan—we decline to consider his challenges to the termination proceeding.

### B. Gilbert's Remaining Claims Are Moot Because of His Incarceration.

Although Gilbert does not have standing to appeal the termination, he does have standing to appeal rulings that directly affect his rights. The only issues that concern Gilbert's rights are the court's findings that placement of Belinda with Gilbert would result in harm to Belinda and the court's refusal, in the adoption proceedings, to order Belinda's adoptive parents to provide for visitation with Gilbert. Both questions are intertwined with Gilbert's status, or lack thereof, as Belinda's Indian custodian; his appeal thus implicitly asks for a restoration or imposition of that status. The guardian ad litem argues that these questions are moot because Gilbert's incarceration means that he "cannot resume caring for the child." Chitina appears to agree that the appeal is nonjusticiable but asks us to rule on the substantive issues Gilbert has raised.

■ We have stated, "Under ordinary circumstances we will refrain from deciding questions where events have rendered the

---

**31.** Section 1914 of ICWA provides that "any ... Indian custodian from whose custody [an Indian] child was removed ... may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914 (2000). Gilbert argues that his appeal may be considered a petition under section 1914. As we explain below, however, Gilbert's Indian custodian status, if any, has been mooted by his incarceration, as has any basis for a petition under section 1914. We thus decline to consider whether an appeal of an ICWA termination proceeding may properly be considered a section 1914 petition.

legal issue moot."[32]  A matter is moot "if it has lost its character as a present, live controversy,"[33] or "if the party bringing the action would not be entitled to any relief even if [it] prevail[s]."[34]  In *Akpik v. State, Office of Management and Budget,* for example, we held that challenges to the state's approval of an oil drilling project were moot once the driller had abandoned the project and the period for approving the project had expired.[35]

◼ Federal law defines "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody and control has been transferred by the parent of such child."[36]  Gilbert was never granted legal custody of Belinda by either the tribe or the state.  The only basis for Gilbert to claim Indian custodian status was his temporary physical custody of Belinda before his arrest in 2000.  The court below assumed, without deciding, that Gilbert had been Belinda's Indian custodian because Gilbert cared for Belinda before his arrest.  Based on this assumption, the court included him in the termination and custody proceedings.  The court never decided, though, whether Gilbert was indeed Belinda's Indian custodian.  Regardless of whether Gilbert previously was Belinda's Indian custodian on the basis of "temporary physical care, custody, and control," he cannot now achieve that status since he will almost certainly be incarcerated for the entirety of Belinda's minority.[37]  Indeed, he will probably spend the rest of his life in prison.  Thus any claim premised on restoration of Gilbert's Indian custodian status is moot.[38]

## C. Legislative Action Has Changed the Standard of Proof Applicable to Active Efforts Findings.

As we discussed above, Gilbert does not have standing to challenge the standard of proof the superior court used in the termination proceeding to determine whether the state had made active efforts to prevent the breakup of his family.  Gilbert argues that due process requires clear and convincing evidence—rather than a preponderance of the evidence—to support a finding that active efforts have been made.[39]  The state, Chitina, and Belinda's guardian ad litem all agree that clear and convincing is the proper standard.  Even though we decline to reach this challenge because Gilbert lacks standing, we note that this challenge has been made moot by legislative action.

---

**32.** *Kodiak Seafood Processors Ass'n v. State,* 900 P.2d 1191, 1195 (Alaska 1995).

**33.** *Akpik v. State, Office of Mgmt. & Budget,* 115 P.3d 532, 535 (Alaska 2005) (quoting *Kodiak Seafood Processors,* 900 P.2d at 1195).

**34.** *O'Callaghan v. State,* 920 P.2d 1387, 1388 (Alaska 1996) (quoting *Maynard v. State Farm Mut. Auto. Ins. Co.,* 902 P.2d 1328, 1329 n. 2 (Alaska 1995)) (challenge to ballot substitutions moot because terms of persons elected had expired).

**35.** *Akpik,* 115 P.3d at 535.

**36.** 25 U.S.C. § 1903(6) (2000).

**37.** Gilbert was convicted of fourteen felonies, eight of which are class A felonies.  AS 11.71.020(c).  He was sentenced to a total of twenty-five years presumptive imprisonment on three of the A felonies.  Under AS 33.16.100(d) Gilbert must serve at least one-third of the twenty-five years, or eight years and four months, before becoming eligible for discretionary parole.

Additionally, Gilbert faces a sentence of six years in another proceeding.  He has been convicted there of several class B felonies for which a minimum of one-fourth of the sentence must be served before eligibility for discretionary parole.  AS 33.16.100(c).  Gilbert is thus assured of incarceration for nine years and ten months from July 8, 2004.  Belinda turns eighteen ten years and three months from that date.  Thus even if Gilbert is a model prisoner there is only the slightest chance that he will be released before Belinda reaches adulthood.

**38.** While we may consider the merits of a moot issue if such consideration is in the public interest, the facts of this case do not meet the three-prong test for the public interest exception enumerated in *Kodiak Seafood Processors,* 900 P.2d at 1196.  Gilbert's status as an Indian custodian is not likely to be repeated, and the issues raised are not likely to evade review.  While the concerns raised are important, they do not justify overriding the mootness doctrine.

**39.** *See Santosky v. Kramer,* 455 U.S. 745, 766–67, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

On May 3, 2006, while this appeal was pending, the governor signed legislation changing the applicable standard of proof for the active efforts finding to clear and convincing.[40]  The legislation was made effective immediately and applied to pending cases, such that the clear and convincing standard would apply to Gilbert's challenge.[41]  Even though we do not reach the merits, we note that Gilbert's appeal may have alerted the legislature and executive of the need to address an important issue in Alaska law.  The conduct of Gilbert's appointed counsel in this case comports with the highest traditions of public advocacy.

## V.  CONCLUSION

Gilbert does not have standing to appeal the termination of Jan's parental rights. The remainder of his appeal is moot because of his incarceration.  Accordingly we AFFIRM the judgment of the superior court.

---

**40.**  Ch. 20, §§ 1–3, 11, SLA 2006.

**41.**  Ch. 20, §§ 12–13, SLA 2006.  The legislative action would cause Gilbert's constitutional challenge to be moot.  *See, e.g., Krohn v. State, Dep't*

*of Fish & Game,* 938 P.2d 1019, 1023 (Alaska 1997) ("Repeal of the regulations therefore moots the issues Krohn raises.").