*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RANES & SHINE, LLC, | ) | |
| | ) | Supreme Court No. S-15222 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-10232 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MACDONALD MILLER | ) | |
| ALASKA, INC., | ) | No. 7003 – May 1, 2015 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Brent R. Cole, Law Office of Brent R. Cole, P.C., Anchorage, for Appellant. Jason J. Ruedy, Law Offices of Royce & Brain, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

In 2005 Gordon Timmerman, the sole owner of MacDonald Miller Alaska, Inc., agreed to release a claim MacDonald Miller had against Ranes & Shine, LLC, and to pay an additional $18,000 in exchange for equipment Ranes & Shine claimed to own free of any encumbrances. Five years later First National Bank Alaska contacted Timmerman, asserting a security interest in the equipment and requesting its return. First

National eventually filed this suit against Timmerman in 2010 to obtain possession of the equipment.[1]

Timmerman filed a third-party complaint against Ranes & Shine and its former managing member, Thomas Ranes, asserting breach of warranty of title, misrepresentation, unfair trade practices, and common law contract claims. In its answer, Ranes & Shine alleged among its other contentions that the applicable statutes of limitation barred Timmerman's suit because First National's publicly filed Uniform Commercial Code (UCC) financing statement should have placed Timmerman on inquiry notice of First National's security interest in the equipment at the time of the agreement in 2005. The superior court disagreed and held Ranes & Shine liable for breach of contract and misrepresentation, while also dismissing the claims asserted against Ranes individually. Ranes & Shine appeals.

We affirm the superior court's statute of limitations and attorney's fees and costs rulings, as well as various procedural rulings for the reasons discussed below. But we reverse the court's decision to dismiss the misrepresentation claim that Timmerman's company, MacDonald Miller, had asserted against Ranes in his individual capacity and remand for further proceedings on that issue.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Thomas Ranes, Ken Embley, and Tom Embley formed Ranes & Shine, LLC in October 2001. Ranes owned 50% of the company, and the Embleys each owned 25% of the company. Ranes had complete managerial authority, and the Embleys were essentially silent partners.

---

[1]    First National's claims are not relevant to this appeal, and we do not discuss them in any detail.

In 2002 Ranes & Shine applied for a loan from First National Bank Alaska. In connection with the loan, Ranes and the Embleys signed a promissory note, a business loan agreement, and a commercial security agreement to secure the loan. The commercial security agreement gave First National a security interest in various categories of collateral, including Ranes & Shine's equipment. On October 30, 2002, First National filed a UCC financing statement perfecting its security interest in the equipment. First National filed a continuation of that financing statement on August 7, 2007.

In 2003 Circle Plumbing & Heating, a company majority-owned by the Embleys, was hired to build Ranes & Shine's facility. Circle hired MacDonald Miller Alaska, Inc., a company wholly owned by Gordon Timmerman, to provide mechanical services for the new building.

MacDonald Miller worked on the project and billed Circle, but was not promptly paid. MacDonald Miller eventually filed a lien against Ranes & Shine's building for approximately $92,000. But MacDonald Miller released the lien a few hours later, allegedly because Tom Embley contacted Timmerman asking him to release the claim so Ranes & Shine could secure additional funding for the building project. Tom Embley allegedly assured Timmerman he would be paid, and Circle later paid MacDonald Miller $60,000 in 2004. This left a claimed balance of $32,000 outstanding.

Timmerman continued to pursue the debt without success until he contacted Ranes & Shine directly and spoke with Ranes. In October 2005 Timmerman and Ranes came to an agreement: in exchange for certain equipment, Timmerman executed a release of the remaining $32,000 debt owed to MacDonald Miller and paid an additional $18,000 to Ranes & Shine.

In the course of reaching this agreement, Ranes incorrectly represented to Timmerman that Ranes & Shine owned clear title to the equipment. Timmerman did not

conduct a UCC record search; he later testified it was not his standard practice to do so and he "didn't even know what UCC stood for" prior to this lawsuit.

After Timmerman took possession of the equipment, he stored it in a shipping container. There it remained until the summer of 2010 when First National contacted him. First National explained it had filed a UCC financing statement documenting its security interest in the equipment several years before Timmerman's agreement with Ranes & Shine. First National also stated that the loan secured by the equipment had gone into default. First National demanded that Timmerman return the equipment, but Timmerman refused.

## B.    Proceedings

First National brought suit against Timmerman in 2010 seeking the return of the equipment. Timmerman answered the complaint and asserted third-party claims against Ranes individually and Ranes & Shine based on Ranes's incorrect representation that Ranes & Shine owned the equipment without any encumbrances. Timmerman asserted the following third-party claims: (1) breach of warranty of title under the UCC; (2) misrepresentation; and (3) deceptive trade practices under Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA). First National's claims against Timmerman were disposed of on summary judgment, leaving only Timmerman's third-party claims.

Ranes & Shine moved for summary judgment on Timmerman's claims based on the applicable statutes of limitation. Superior Court Judge John Suddock granted Ranes & Shine's motion in part, ruling that Timmerman's breach of warranty claim was subject to the UCC's strict four-year limitations period[2] and that Timmerman

---

[2]    *See* AS 45.02.725(a)-(b) ("An action for breach of a contract for sale must be commenced within four years after the cause of action has accrued. . . . A cause of
(continued...)

failed to bring his breach of warranty claim within that period. The superior court denied Ranes & Shine's motion with respect to the misrepresentation and UTPA claims, concluding that there were genuine issues of material fact regarding when Timmerman was put on inquiry notice. The court did not address a common law contract claim Timmerman had added through an amended complaint filed while the parties were briefing the summary judgment motion.[3]

The superior court held a two-day bench trial in May 2013 to address the remaining claims. The court ruled that Timmerman's misrepresentation, UTPA, and common law breach of contract claims were not barred by the statutes of limitation because Timmerman was not on inquiry notice until he was contacted by First National in 2010. The court also concluded that Timmerman had proven his misrepresentation and breach of contract claims, but not his UTPA claim.

The superior court observed, however, that the lawsuit had been "inaptly filed as a personal lawsuit by Mr. Timmerman against [Ranes & Shine] when all the evidence is that he was negotiating and settling and purchasing this equipment as a corporate officer of MacDonald Miller." Based on this finding, and further finding that Ranes & Shine would suffer no prejudice, the court on its own initiative substituted MacDonald Miller as the plaintiff.

---

[2](...continued) action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."); *see also Armour v. Alaska Power Auth.*, 765 P.2d 1372, 1375 (Alaska 1988) (holding that the four-year UCC statute of limitations is not tolled under the common law discovery rule regardless of a purchaser's knowledge).

[3]    Timmerman's contract claim alleged that Ranes & Shine had not provided "good and valuable consideration," apparently due to the seizure of the equipment, and that Ranes & Shine breached the duty of good faith and fair dealing by selling equipment that Ranes & Shine "was not authorized to sell."

MacDonald Miller prepared a final judgment for the superior court's signature. The proposed final judgment stated that the claims against Ranes individually were dismissed. Ranes & Shine objected, arguing that the superior court's oral findings had not dismissed the individual claims against Ranes.

The superior court signed the proposed final judgment without specifically discussing its decision to dismiss the claims against Ranes individually. The court awarded MacDonald Miller $50,329.37, plus interest, attorney's fees, and costs. Ranes & Shine appeals.

## III. STANDARD OF REVIEW

"Determinations of which legal authorities apply in a case and interpretations of what those legal authorities mean are questions of law subject to de novo review."[4] "When applying the de novo standard of review, we apply our independent judgment . . . , adopting the rule of law most persuasive in light of precedent, reason, and policy."[5]

We review a trial court's findings of fact for clear error.[6] Clear error "exists when 'our review of the record leaves us with the definite and firm conviction that the superior court has made a mistake.' "[7]

---

[4]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petrol., Inc.*, 322 P.3d 114, 122 (Alaska 2014) (footnotes omitted).

[5]     *Id.* (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)) (internal quotation marks omitted).

[6]     *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006).

[7]     *Id.* (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207-08 (Alaska 2000)).

We review a trial court's decision to admit evidence, including the testimony of a witness, for abuse of discretion.[8] A decision to permit or deny an amendment to the pleadings is reviewed for abuse of discretion.[9] We will find an abuse of discretion when the decision on review is manifestly unreasonable.[10]

## IV. DISCUSSION

Ranes & Shine primarily argues that the superior court erred when it ruled that the statutes of limitation did not bar MacDonald Miller's claims. Ranes & Shine also argues that the court erred in dismissing the claims against Ranes individually and awarding MacDonald Miller attorney's fees and costs. Finally, Ranes & Shine raises several procedural issues. We generally affirm the superior court's rulings, but we reverse and remand its dismissal of the misrepresentation claim against Ranes individually.

### A. MacDonald Miller's Common Law Breach Of Contract And Misrepresentation Claims Were Not Barred By The Statutes Of Limitation.

MacDonald Miller asserted three claims at trial: (1) misrepresentation; (2) unfair trade practices; and (3) breach of contract. Only the misrepresentation and breach of contract claims are at issue in this appeal.[11]

---

[8] *Getchell v. Lodge*, 65 P.3d 50, 53, 58 (Alaska 2003).

[9] *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004).

[10] *See Tufco, Inc. v. Pacific Envtl. Corp.*, 113 P.3d 668, 671 (Alaska 2005).

[11] The trial court dismissed MacDonald Miller's UTPA claim, and MacDonald Miller has not appealed that ruling.

A party must bring a misrepresentation claim within two years of the accrual of his cause of action[12] and a breach of contract claim within three years of accrual.[13] Generally, "accrual of a cause of action is established at the time of the injury."[14] But the common law discovery rule tolls the running of the statutory period "[w]here an element of a cause of action is not immediately apparent."[15] The discovery rule "mitigate[s] the harshness that can result from the [accrual] rule's preclusion of

---

[12]     AS 09.10.070(a).

[13]     AS 09.10.053.  *But see* AS 45.02.725(a) (four-year statute of limitations applicable to breach of a contract for sale of goods).  Ranes & Shine argues that the contract between Timmerman and Ranes was one for the sale of goods, making it subject to the four-year statute of limitations in AS 45.02.725 to which the discovery rule does not apply.  *Armour v. Alaska Power Auth.*, 765 P.2d 1372, 1375 (Alaska 1988).  But we conclude that Ranes & Shine did not preserve this argument.

MacDonald Miller first asserted its common law contract claim while the briefing on Ranes & Shine's motion for summary judgment was pending.  Ranes & Shine thus argued for the application of AS 45.02.725 for the first time in its summary judgment reply brief.  But the superior court did not issue a ruling on that issue, and Ranes & Shine never sought reconsideration or filed a new motion seeking to bar the common law contract claim.  Ranes & Shine also did not ask the court to apply the four-year statute of limitations at trial even after the court specifically asked the parties if it needed to make any additional rulings.  Thus, Ranes & Shine asks that we review an order that was never properly requested and that was never issued.  We decline to do so. *See Gunderson v. Univ. of Alaska, Fairbanks*, 902 P.2d 323, 327 n.5 (Alaska 1995) ("Gunderson did not present this argument to the trial court . . . .  Therefore it is waived."); *Alaska State Emps. Ass'n v. Alaska Public Emps. Ass'n*, 813 P.2d 669, 671 n.6 (Alaska 1991) ("As a matter of fairness, the trial court could not consider an argument raised for the first time in a reply brief.").

[14]     *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1273 (Alaska 2013) (quoting *Cameron v. State*, 822 P.2d 1362, 1365 (Alaska 1991)) (internal quotation marks omitted).

[15]     *Id.* at 1274 (alteration in original) (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002)) (internal quotation marks omitted).

claims where the injury provided insufficient notice of the cause of action to the plaintiff."[16]

> In discussing the discovery rule, we have previously explained:

> > [T]he statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. Thus we have said the relevant inquiry is the date when the claimant reasonably should have known of the facts supporting her cause of action. We look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights.[17]

There are at least two dates from which the statute of limitations can begin to run: (1) the actual-notice date, and (2) the inquiry-notice date. The actual-notice date is "the date when [the] plaintiff reasonably should have discovered the existence of all essential elements of the cause of action."[18] The inquiry-notice date is "the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights."[19] The inquiry-notice date generally controls when a cause of action accrues.[20]

---

[16] *Id.* (second alteration in original) (quoting *Cameron*, 822 P.2d at 1365) (internal quotation marks omitted).

[17] *Id.* at 1275 (alteration in original) (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).

[18] *Id.* (alteration in original) (quoting *John's Heating Serv.*, 46 P.3d at 1031) (internal quotation marks omitted).

[19] *Id.* (quoting *John's Heating Serv.*, 46 P.3d at 1031) (internal quotation marks omitted).

[20] *Id.* We note that there are exceptions to this rule not at issue in this case.
(continued...)

Ranes & Shine challenges the superior court's statute of limitations rulings on two grounds. First, Ranes & Shine asserts that we should hold that MacDonald Miller was on notice of its claims in 2005 because First National's publicly filed UCC financing statement put MacDonald Miller on constructive notice[21] of the fact that the equipment was encumbered, contrary to Ranes's representation. Whether a UCC financing statement provides constructive notice of the elements of a claim for statute of limitations purposes is a question of law that we review de novo.[22]

Second, Ranes & Shine argues that the facts of this case demonstrate that MacDonald Miller was on inquiry notice of its claims in 2005 even without imputing the information contained in the UCC financing statement to it. Determining the accrual date is a fact-intensive inquiry conducted by the superior court, and we review the court's findings for clear error.[23]

1.    **UCC financing statements do not provide constructive notice of the elements of a claim for statute of limitations purposes.**

Ranes & Shine argues that First National's UCC financing statement gave MacDonald Miller constructive notice of the fact that Ranes had misrepresented

---

[20](...continued)
For example, if the plaintiff made a reasonable inquiry but failed to discover the essential elements of his cause of action, the actual-notice date may control. *Cameron*, 822 P.2d at 1367.

[21]    "Constructive notice is information or knowledge of a fact imputed by law to a person, although he or she may not actually have it . . . ." 58 AM. JUR. 2D *Notice* § 6 (2015).

[22]    *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007) (reviewing questions of law de novo).

[23]    *Gefre*, 306 P.3d at 1271 (citing *Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005)); *Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991) ("Application of the discovery rule . . . is dependent on facts that are often unclear.").

Ranes & Shine's ability to pass clear title to the equipment. Ranes & Shine reasons that the superior court should have charged MacDonald Miller with notice of First National's security interest in the equipment at the time of the 2005 agreement. This would place the accrual date sometime in October 2005, and the statutes of limitation would bar MacDonald Miller's claims.[24] But we decline to adopt Ranes & Shine's constructive notice argument because it is inconsistent with our statute of limitations jurisprudence and would be bad public policy.

> **a.    We have implicitly rejected the constructive notice position Ranes & Shine asks us to adopt.**

Neither party has cited any statute of limitations cases where we charged a plaintiff with constructive notice of publicly recorded facts absent a finding that the

---

[24]    We note that the parties have briefed this case as though MacDonald Miller's misrepresentation and common law contract claims must have accrued at the same time. We have treated their arguments in the same manner because it does not affect the result in this case.

But our holding in *Jarvill v. Porky's Equipment, Inc.* suggests that their assumption may not be correct. 189 P.3d 335, 339 (Alaska 2008). In *Jarvill* the plaintiff purchased a boat that was allegedly constructed negligently. *Id.* at 336. Two and a half years after the plaintiff took delivery of the boat, the boat sank, and the plaintiff sued the builder. *Id.* at 337. We held that even though the boat was defective when it was sold, the plaintiff did not suffer an injury that would support his negligence and product defect claims until the boat sank, and, therefore, those causes of action did not accrue until the boat sank. *Id.* at 339-41.

Similarly, it could be argued that MacDonald Miller's misrepresentation action did not accrue until First National demanded the equipment be returned because MacDonald Miller had not suffered damages necessary to support its claim until that point. If that were the case, MacDonald Miller's misrepresentation claim — but not necessarily its contract claim — would be timely even without the operation of the discovery rule. But we decline to apply *Jarvill* here because it was not raised before us or the superior court, and its application would not change our ultimate conclusions regarding the timeliness of MacDonald Miller's claims.

plaintiff was already on inquiry notice.[25] Our review has identified only one Alaska case — *Bauman v. Day* — where it was argued that a party should have been charged with knowledge of facts in a publicly recorded document for statute of limitations purposes without already being on inquiry notice.[26]

In *Bauman* the Baumans purchased a property in 1984 from the Days after allegedly asking the Days about the presence of permafrost on the property and being

---

[25]    While we have held that a person may be charged with knowledge of information in publicly available documents in a variety of contexts, none of these cases specifically considers that issue with respect to the statute of limitations where the plaintiff was not already on inquiry notice. *See, e.g.*, *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1248 (Alaska 2007) (holding that a dealership was on constructive notice of guardianship because of existence of guardianship order); *Watega v. Watega*, 143 P.3d 658, 665 (Alaska 2006) (holding that purchasers of divorcing couple's home had constructive notice of wife's claim to the property because wife had filed an opposition to the sale with the superior court and purchasers knew about the divorce and the husband's need to obtain court permission prior to sale); *Methonen v. Stone*, 941 P.2d 1248, 1252 (Alaska 1997) (charging a purchaser of real property with notice of information in public records where other facts known to the purchaser placed him on inquiry notice of a potential encumbrance); *State v. Alaska Land Title Ass'n*, 667 P.2d 714, 725 (Alaska 1983) (holding that title insurer's policy was triggered because insurer was held to be on constructive notice of a public land order published in the Federal Register). Nothing in this opinion today affects these earlier holdings.

[26]    892 P.2d 817 (Alaska 1995). The theory of constructive notice has appeared elsewhere in our statute of limitations cases, but never in the way Ranes & Shine proposes here. *See, e.g.*, *Phillips v. Gieringer*, 108 P.3d 889, 893 (Alaska 2005) (discussing constructive notice and the relation back doctrine); *Breck v. Moore*, 910 P.2d 599, 604-05 (Alaska 1996) (holding that plaintiffs were on constructive notice of information known or that should have been known to the plaintiffs' attorney). *But cf. Moore v. Allstate Ins. Co.*, 995 P.2d 231, 239 (Alaska 2000) (holding in the discovery rule context that a homeowner would not be charged with constructive notice of her claim that her insurer had allegedly misrepresented the coverage available to her under the National Flood Insurance Program despite the fact that she could have researched the policy in the Federal Register).

told that there was none.[27]  But the recorded subdivision plat "showed the presence of permafrost-laden soils on the land."[28]

The Baumans built a house on the property, and in 1986 began experiencing permafrost-related problems.[29]  The early problems were not significant, and the Baumans dismissed them as normal settlement of a new home.[30]  By 1988, however, the problems were so significant that the Baumans stopped paying their property taxes until the property was reevaluated to take the apparent permafrost into account.[31]

The Baumans did not bring a suit against the Days until 1992, alleging breach of contract among other claims.[32]  At the time, a breach of contract action was subject to a six-year statute of limitations.[33]  On a motion for summary judgment, the superior court found that the contract action had accrued at the time of the sale in 1984 and ruled that the Baumans' contract claims were barred.[34]  The Baumans appealed and

---

[27]  *Bauman*, 892 P.2d at 820.

[28]  *Id.* at 822.

[29]  *Id.* at 820.

[30]  *Id.*

[31]  *Id.*

[32]  *Id.*

[33]  *See id.* at 827 & n.16.  As noted above, a common law breach of contract claim is now subject to a three-year statute of limitations.  *See* AS 09.10.053.

[34]  *Bauman*, 892 P.2d at 822.

we reversed in part, holding that the statute of limitations on their contract claim did not begin to run until they began experiencing permafrost-related problems.[35]

Chief Justice Moore, writing in partial dissent, concluded that the language regarding the presence of permafrost in the subdivision plat meant that the Baumans could have discovered the existence of permafrost on the land in 1984.[36] He would have held that the Baumans had constructive notice of the permafrost at the time they bought the house because (1) "[i]t is not unreasonable to expect the Baumans to have examined the subdivision plat, given that the deed of trust's description specifically referenced that plat," and (2) the Baumans were allegedly concerned before purchasing the property that it might contain permafrost.[37]

This court, however, implicitly dismissed this constructive notice argument.[38] Instead, we reviewed the facts in the light most favorable to the Baumans and concluded that the Baumans did not discover the permafrost "until they built on the property and problems began to arise."[39] Noting that the Baumans allegedly became aware of the permafrost in 1988, we held that the breach of contract action was filed within the six-year statute of limitations period in effect at the time.[40]

Ranes & Shine's reasoning is similar to Chief Justice Moore's dissenting opinion and is not supported by our holding in *Bauman*. If we had construed the

---

[35]     *Id*. at 828.

[36]     *Id*. at 831 (Moore, C.J., dissenting).

[37]     *Id*.

[38]     *Id*. at 828.

[39]     *Id*.

[40]     *Id*.

information in the subdivision plat as being sufficient to put the Baumans on inquiry notice, we would have needed to determine whether the Baumans undertook an inquiry and whether the inquiry was reasonable.[41] Our not doing so in the face of Chief Justice Moore's dissent on this particular point demonstrates our implicit rejection of the argument Ranes & Shine advances here.

> **b.** **Public policy weighs against holding that a misrepresentation victim is on constructive notice of the information in publicly recorded financing statements for the purposes of the statute of limitations analysis.**

A UCC financing statement is intended to provide notice to the world of a secured party's interest in specific collateral.[42] The notice protects the party who obtains the security interest, it also protects those who consider dealing with the debtor by helping a potential creditor understand where it would stand in the order of priority among other creditors and by helping it take appropriate action to protect its interests.[43]

But a financing statement is not intended to shield a tortfeasor from the consequences of his misrepresentations. "The recording laws establish a priority as between innocent claimants to the same property or right; *they are not intended to give security to the perpetrators of fraud as against their victims.*"[44] Any other rule would

---

[41]     *See Cameron v. State*, 822 P.2d 1362, 1367 (Alaska 1991) (discussing the third part of the discovery rule analysis as stated in *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991)).

[42]     68A AM. JUR. 2D *Secured Transactions* § 216 (2015).

[43]     *Id.*

[44]     *Larabee v. Eichler*, 271 S.W.3d 542, 547 (Mo. 2008) (en banc) (emphasis added) (quoting *Dreckshage v. Cmty. Fed. Sav. & Loan Ass'n*, 555 S.W.2d 314, 319-20 (Mo. 1977) (en banc)). Although *Larabee* involved a real estate transaction, we conclude the same rationale is true for UCC financing statements. *See id.* at 544-45.

reward the party that convincingly misrepresents the status of his title by relieving him of liability once the statute of limitations has run without any indication to his victim that there is a need to undertake additional investigation. We see no convincing reason to adopt such a rule.

The potential collateral consequences of extending the notice a financing statement gives beyond the realm of secured transactions also give us pause. For example, our case law establishes that a plaintiff must prove that he justifiably relied on a defendant's incorrect statements to prove misrepresentation.[45] If we adopted Ranes & Shine's broad constructive-notice argument, it is unlikely that any misrepresentation regarding ownership could be justifiably relied upon when a contradictory recorded document exists: the misrepresentations would always be belied by the publicly recorded documents of which the plaintiff would be deemed to have constructive notice. Nothing in our case law suggests such a result, and we decline to endorse it here.

### 2. The superior court did not commit clear error when it set the inquiry-notice date.

The parties do not dispute that Timmerman and Ranes agreed to settle MacDonald Miller's outstanding debt in October 2005. Nor is there any dispute that First National initially contacted Timmerman in the summer of 2010. MacDonald Miller brought its third-party complaint in September 2010. The superior court found that MacDonald Miller's causes of action did not accrue at the time of the 2005 agreement based primarily on Ranes's and Timmerman's lack of commercial financing sophistication and Ranes's affirmative representation to Timmerman that Ranes & Shine owned clear title to the equipment. Instead, the court found that the statutes of limitation began to run when First National contacted Timmerman.

---

[45] *Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670 (Alaska 2002).

Ranes & Shine argues that the superior court erred in finding that the statutes of limitation began to run upon First National's 2010 contact with Timmerman. Ranes & Shine asserts that the information known to MacDonald Miller at the time of the 2005 transaction put it on inquiry notice in October 2005, making its lawsuit untimely.[46]

We have reviewed the record in this appeal with Ranes & Shine's arguments in mind and find no clear error. Timmerman and Ranes both testified that they believed Ranes & Shine owned clear title to the equipment. Timmerman and Ranes also both testified that they did not know about UCC financing statements until this case. The superior court specifically found Timmerman credible on this point, while noting that both Timmerman and Ranes lacked commercial sophistication.

While Timmerman appears to have known that a bank may have been involved in financing Ranes & Shine's building, Timmerman also claimed he believed that the Embleys had put a substantial amount of their own money into the project. The superior court apparently credited this testimony because it later explicitly referred to the Embleys' investment in Ranes & Shine as one explanation for why Timmerman reasonably relied on Ranes's representation that Ranes & Shine owned clear title to the equipment.

We conclude that the superior court did not commit clear error in finding Timmerman was not on inquiry notice at the time of the sale. These facts and findings

---

[46] Ranes & Shine argues this point in two different contexts: (1) the denial of its motion for summary judgment; and (2) the superior court's findings after trial. We address only the latter here. The superior court denied Ranes & Shine's motion, at least as to the misrepresentation claim, because it found there were genuine issues of material fact. It then held a trial. We will not review an order denying summary judgment after there has been a subsequent trial on the merits of the facts at issue in the summary judgment proceedings. *Larson v. Benediktsson*, 152 P.3d 1159, 1170 (Alaska 2007).

provide sufficient support for the court's decision even in the face of contrary evidence. Thus, we affirm the court's finding that Timmerman was not on inquiry or actual notice until contacted by First National. Because MacDonald Miller filed its claims against Ranes & Shine within two years of that contact, its claims were timely.

**B.      The Misrepresentation Claim Against Ranes In His Individual Capacity Should Not Have Been Dismissed.**

MacDonald Miller asserted its misrepresentation claim against both Ranes & Shine and Ranes in his individual capacity. While the superior court orally ruled in MacDonald Miller's favor and specifically discussed Ranes & Shine's liability, it did not address Ranes's individual liability. That issue first arose after trial when MacDonald Miller submitted a proposed final judgment including language dismissing the claim against Ranes individually. Ranes & Shine objected to this part of the proposed final judgment. Despite Ranes & Shine's specific objection to this language, the superior court adopted the proposed final judgment as its order without any discussion of why it dismissed the claims against Ranes.

Ranes & Shine argues that the superior court erred in dismissing the misrepresentation claim against Ranes. Ranes & Shine argues that an agent may be held liable to a third-party for the agent's negligence, and asserts that it was Ranes's misrepresentations that gave rise to MacDonald Miller's claims. MacDonald Miller argues that Ranes was not individually liable because Ranes was Ranes & Shine's agent acting on the company's behalf. These arguments present questions of law which we review de novo.[47]

_____

[47]      *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007) (reviewing questions of law de novo).

Our case law indicates that an agent's liability depends on the type of claim asserted.[48] "The law is well established that in the event of negligence by a disclosed agent acting within the scope of his authority the agent may be held individually liable to a third party."[49] But for breach of contract claims "officers of a corporation will not ordinarily be held personally liable for contracts they make as agents of the corporation" if they disclose their agency and the existence of the corporation.[50] Thus, an agent may be held individually liable for negligence the agent commits, but not, in the majority of circumstances, for breach of contract.

The only claim MacDonald Miller asserted against Ranes on which MacDonald Miller prevailed was its misrepresentation claim. It is undisputed that Ranes was the person who misrepresented the status of title to the equipment, and it is through Ranes's misrepresentation that Ranes & Shine also became liable for misrepresentation. The case law discussed above compels the conclusion that Ranes would be individually liable for tortious acts he individually committed while acting as an agent for Ranes & Shine — he thus can be held individually liable for the misrepresentation he made. An agent, even a corporate officer or director, is not cloaked with tort immunity because he was acting in the course and scope of his employment when he committed the tort.

---

[48] We note that the briefing in this case assumes that Ranes was acting as Ranes & Shine's agent during his negotiations with Timmerman.

[49] *Austin v. Fulton Ins. Co.*, 498 P.2d 702, 704 (Alaska 1972); *see* 11 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1135 (2014) ("It is the general rule that an individual is personally liable for all torts the individual committed, notwithstanding the person may have acted as an agent or under directions of another."); *see also* 18B AM. JUR. 2D *Corporations* § 1629 (2015) ("If . . . a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he or she is liable to injured third persons . . . .").

[50] *Jensen v. Alaska Valuation Serv., Inc.*, 688 P.2d 161, 162-63 (Alaska 1984).

Therefore, we hold it was error to dismiss the misrepresentation claim asserted against Ranes in his individual capacity.

**C.     The Superior Court Did Not Abuse Its Discretion When It Amended The Pleadings Sua Sponte.**

While issuing its oral decision, the superior court commented that it believed Timmerman was the wrong plaintiff and that the real party in interest was MacDonald Miller. Finding that "the case was tried on the basis [of] what happened to MacDonald Miller and . . . the appropriate treatment of that," the court amended the pleadings sua sponte to substitute MacDonald Miller as the plaintiff. The court further found that there was no prejudice to Ranes & Shine as a result of the amendment. Ranes & Shine argues that this decision constituted an abuse of discretion.

We disagree. A trial court has broad power to conform the pleadings to the evidence actually presented.[51] Alaska Rule of Civil Procedure 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."[52] Nothing in Civil Rule 15(b) prohibits the superior court from amending the pleadings sua sponte. "Application of [Civil Rule 15(b)] is appropriate . . . when evidence supporting the amendment was offered at trial . . . with the opposing party's express or implied consent . . . ."[53] "In determining implied consent, prejudice to the party opposing amendment is relevant."[54]

---

[51]     *See* Alaska R. Civ. P. 15(b).

[52]     *Id.*

[53]     *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 396 (Alaska 2001).

[54]     *Id.* (citing 6A CHARLES ALLAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1493 (2d ed. 1990)).

Reviewing the circumstances here, we find no abuse of discretion.[55] Timmerman testified that he was MacDonald Miller's sole owner. He also testified that when he entered into the contract with Ranes he was representing himself *and his company*. Part of the agreement he entered into with Ranes involved MacDonald Miller forgiving the remaining balance owed for work MacDonald Miller had done on Ranes & Shine's building. Although Timmerman paid the additional $18,000 with a personal check and not a corporate check, he testified this was only a matter of convenience. We also note that Ranes & Shine occasionally referred to MacDonald Miller as if MacDonald Miller were the party asserting claims against it and that Ranes & Shine's defense does not appear to have been predicated on Timmerman being an improper plaintiff.

Based on the evidence presented, the way the parties tried their case, and the lack of prejudice to Ranes & Shine, we hold that the superior court did not abuse its discretion when it sua sponte amended the pleadings to substitute MacDonald Miller as the third-party plaintiff.

**D.    The Superior Court Did Not Abuse Its Discretion When It Permitted Ranes To Testify Telephonically.**

Leading up to the trial there was significant confusion regarding whether and how Ranes would testify because he was in federal custody outside of Alaska. MacDonald Miller had indicated it intended to depose Ranes telephonically, but later asked for a 60-day continuance to determine whether Ranes would testify at trial. The superior court suggested deposing Ranes but also offered to help facilitate Ranes's appearance at trial.

A month before trial was to start, MacDonald Miller filed a witness list indicating it intended to have Ranes testify telephonically. Ranes & Shine filed an

---

[55]    *Cf. id.* at 380 (reviewing amendment of pleadings for abuse of discretion).

objection to Ranes appearing telephonically based on MacDonald Miller's failure to comply with the civil rules. On the first day of trial, the superior court ruled it would allow Ranes to testify telephonically and stated that, while counsel for Ranes & Shine "object[ed] that the I's aren't dotted and the T's aren't crossed[,] . . . in substance rather than form [Timmerman's motion was] compliant."

Ranes & Shine appeals that decision, asserting that (1) it was prejudiced by the superior court's decision to permit Ranes to testify telephonically because it was unable to confront him with exhibits; (2) Timmerman filed the notice too close to trial; and (3) it was "led . . . to believe that the purpose of the sixty[-]day continuance in January 2013 was to facilitate the deposition of Ranes." We review the superior court's decision to grant a motion to permit telephonic testimony for abuse of discretion.[56] And we have previously noted that procedural rules, such as those providing for telephonic testimony, "should be interpreted liberally in order to avoid determinations based on technicalities."[57]

We hold the superior court did not abuse its discretion in permitting Ranes to testify telephonically. Alaska Rule of Civil Procedure 99(a) provides that the court may allow a witness "to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties." And in a case presenting similar issues, we determined that it was not an abuse of discretion for the superior court to undertake a good-cause analysis that considered the cost, time, and inconvenience of transporting a prisoner for in-person testimony.[58] We affirmed the superior court's finding that it would not prejudice the inmate — who was a party — to

---

[56] *Silvers v. Silvers*, 999 P.2d 786, 789 (Alaska 2000).

[57] *Rollins v. Leibold*, 512 P.2d 937, 941 n.8 (Alaska 1973).

[58] *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1113 (Alaska 2002).

participate telephonically at trial, as opposed to being physically present in court.[59]

Here, the superior court made a brief good-cause finding that Ranes was incarcerated out of state. The court also noted that it would work with the parties to address any problems arising out of Ranes's telephonic participation. Our review of Ranes's testimony reveals that Ranes & Shine never requested such help or complained of being unable to show Ranes an exhibit. If Ranes & Shine had asked for assistance, we believe the court would have tried to resolve any issues as it had previously offered to do. Given that there was good cause to permit Ranes to testify telephonically and Ranes & Shine has not demonstrated any prejudice, we hold that the court did not abuse its discretion in allowing Ranes to testify telephonically.

**E.     The Superior Court Did Not Err When It Awarded Attorney's Fees And Costs To MacDonald Miller.**

Ranes & Shine also argues that the superior court abused its discretion in awarding MacDonald Miller attorney's fees and costs because Timmerman — not MacDonald Miller — actually incurred the charges in this case. But any attorney's fees or costs Timmerman incurred were incurred for MacDonald Miller's benefit, and the evident unity of interests between Timmerman and MacDonald Miller that rendered MacDonald Miller's substitution proper similarly supports the award of attorney's fees and costs to MacDonald Miller.[60] Therefore, the superior court did not err when it awarded MacDonald Miller's attorney's fees and costs.[61]

---

[59]     *Id*.

[60]     *See BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 327 P.3d 185, 192 (Alaska 2014) ("[O]ur case law has long made it clear that, regardless of how parties are formally arranged, fees and costs may be awarded based on actual adversity of interests.").

[61]     Ranes & Shine also appears to challenge the superior court's decision to

(continued...)

## V. CONCLUSION

We AFFIRM the superior court in all respects except its decision to dismiss MacDonald Miller's misrepresentation claim against Ranes in his individual capacity. We REVERSE the dismissal as to Ranes and REMAND for further proceedings consistent with this opinion.

---

[61](...continued)
enhance the fee award.  But we do not address that argument here because it was first raised in Ranes & Shine's reply brief. *Sumner v. Eagle Nest Hotel*, 894 P.2d 628, 632 (Alaska 1995).