NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

EDWARD H., )
　 )　Supreme Court No. S-18832
　　　　　　　　　　Appellant, )
　 )　Superior Court No. 3AN-17-06859 CI
　 )
　　　　v. )
　 )　MEMORANDUM OPINION
SARAH B., )　　　　AND JUDGMENT*
　 )
　　　　　　　　　　Appellee. )　No. 2079 – March 19, 2025
　 )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Edward H., pro se, Anchorage, Appellant. Notice of nonparticipation filed by Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.　INTRODUCTION

In a contentious child custody case, the superior court granted the mother's unopposed motion for a no-contact order and awarded her the attorney's fees and costs she had incurred in filing the motion. The father later moved for relief from the attorney's fees order, contending that he had been unaware of the underlying motion

---

\*　　　Entered under Alaska Appellate Rule 214.

because it had been served on his attorney, who both he and the attorney mistakenly believed had withdrawn from the representation.

The superior court denied the father's motion, adopting the mother's arguments that her motion for a no-contact order had been properly served and that the father had failed to demonstrate any excusable neglect that could justify relief from the attorney's fees order. Seeing no abuse of discretion in this ruling, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Edward H. and Sarah B.[1] divorced in 2018 and since then have been involved in what the superior court described as a "high conflict" case.[2] In 2021 we affirmed the superior court's determination that Edward was to have sole physical custody of the parties' two children.[3] The circumstances then changed. Sarah relocated to Texas in June 2022, where she lived with her husband and the parties' younger child; the parties' older child was accepted for residential treatment at a youth academy in Utah. Edward has visitation in the summers, spring breaks, and holidays.

### B. Proceedings

#### 1. Sarah's motion for a no-contact order and attorney's fees

On April 25, 2023, Sarah moved for a civil no-contact order, accusing Edward of "continued harassment and abusive communications, and . . . unwavering defiance to obey any orders this court issues." Sarah advised the court that there was "no benefit for the parties to have further communication," and she asked for "full and reasonable attorney's fees associated with the underlying motion practice."

---

[1] Initials have been used to protect the identity of the parties.

[2] *Sarah B. v. Edward H.*, No. S-17742, 2021 WL 713942, at *1 (Alaska Feb. 24, 2021).

[3] *Id.* at *4–5.

Having received no opposition from Edward, the court issued the requested no-contact order on May 10, prohibiting contact between the parties and awarding Sarah "her full and reasonable attorney's fees and costs." On May 19 Sarah filed an accounting of the relevant fees and costs in the amount of $5,450.

On May 31 Edward's counsel moved to withdraw, and the court granted the motion two weeks later. The next day the court issued its order awarding Sarah the full amount of the fees and costs she had requested.

**2.      Edward's motion for relief from the attorney's fees order**

On June 26 Edward filed a "Motion for Relief," asking the court to set aside its attorney's fees order pursuant to either Alaska Civil Rule 60(b) ("Relief from Judgment or Order") or Alaska Civil Rule 77(k) ("Motions for Reconsideration"). Edward explained the circumstances surrounding his failure to oppose Sarah's motion. He explained that his "prior attorney, Jacob Sonneborn, entered this case on April 18, 2022, for a hearing that took place that day," with the intent of withdrawing after the hearing, "and he and I believed that he had." Edward had filed a document himself a few weeks later — a "Claim of Exemption"[4] — which was accepted by the court as filed, and Sarah's response on May 10 was served only on Edward, which reinforced his belief that Sonneborn had withdrawn. It was during this period of time — when, according to Edward, he believed he was no longer represented by Sonneborn — that Sarah filed the motion for a no-contact order and served it on Sonneborn. For that reason, Edward explained, the motion "was not noticed until after the Court had granted it."

According to Edward, after the court granted Sarah's motion for a no-contact order, Sonneborn contacted Sarah's lawyer and "offered not to file a motion to

---

**4**      The Claim of Exemption apparently related to an earlier writ of execution Sarah used to collect on a money judgment against Edward, though the context is not clear in our record.

contest the Protective Order so long as [Sarah] would waive her claim for attorney's fees." Edward claimed that Sarah "agreed as long as a stipulation was prepared memorializing the agreement." He asserted that he also heard from his daughter that Sarah had agreed "to let [Edward] off the hook for attorney's fees," and he concluded by asking the court "to enforce the agreement that was reached."

In Sarah's opposition, she pointed out that both the motion for a no-contact order and the order itself had been properly served on Sonneborn before he withdrew. She contended that serving the response to Edward's claim of exemption directly on him was an aberration due to "a formality of the specific form": "In every other instance . . . [counsel of record] was properly served." She disputed Edward's assertion that she had agreed to waive the attorney's fees claim, contending that it was contingent on Sonneborn drafting a stipulation that would preclude Edward from filing "any 60(b) motion to reopen the case, or any additional pleadings" (emphasis omitted), which Sonneborn failed to do; Sonneborn wrote instead, "I do not see the need for a stipulation. You got your order." Sarah also pointed out that despite being timely served with the May 10 no-contact order, Edward failed to move for reconsideration within 10 days.[5]

The superior court denied Edward's motion for relief "for the reasons set forth in the opposition." Edward appeals.

## III. STANDARD OF REVIEW

"Relief from a judgment is addressed to the sound discretion of the trial court . . . ."[6] We therefore review the denial of a Rule 60(b)(1) motion for abuse of

---

[5] *See* Alaska R. Civ. P. 77(k) ("A motion to reconsider the ruling must be made within ten days after the date of notice of the ruling . . . .").

[6] *Richard v. Boggs*, 162 P.3d 629, 632 (Alaska 2007) (brackets omitted) (quoting *Alaska Truck Transp., Inc. v. Inter-Alaska Credit Serv., Inc.*, 397 P.2d 618, 619 (Alaska 1964)).

discretion[7] and "will find an abuse of discretion when the decision on review is manifestly unreasonable."[8]

## IV. DISCUSSION

Edward contends that the superior court should have granted him relief from the attorney's fees award pursuant to Rule 60(b)(1), which provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise or excusable neglect."[9] To succeed on this appeal, Edward "must demonstrate the existence of 'mistake, inadvertence, surprise or excusable neglect' and demonstrate that the superior court's refusal to relieve [him] from the final judgment was 'manifestly unreasonable.' "[10] We conclude that he fails to carry this burden.

Excusable neglect is a "somewhat elastic concept that may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit."[11] But we have also recognized that "an attorney's failure to

---

[7] *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 786 (Alaska 2015) (citing *Young v. Kelly*, 334 P.3d 153, 157 (Alaska 2014)).

[8] *Id.* at 787 (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

[9] Although Edward cited both Rule 60(b) and Rule 77(k) in his motion for relief in the superior court, on appeal he relies only on Rule 60(b).

[10] *Erica G.*, 357 P.3d at 788 (footnote omitted) (first quoting Alaska R. Civ. P. 60(b)(1); and then quoting *Ranes & Shine, LLC*, 355 P.3d at 508); *see also Chena Obstetrics & Gynecology, P.C. v. Bridges*, 502 P.3d 951, 959 (Alaska 2022).

[11] *Chena Obstetrics*, 502 P.3d at 957-58 (emphasis omitted) (quoting *Erica G.*, 357 P.3d at 787).

advance a legal argument or claim, whether attributable to mistake, inadvertence or neglect, typically does not warrant relief."[12]

The crux of Edward's argument is that he failed to respond to Sarah's motion for a no-contact order because it was served on his then-attorney, who both he and the attorney believed was no longer representing him. Edward argues that the attorney did not respond because he thought he was no longer involved in the case, and Edward did not respond because, having not been served with the motion, he was unaware of it. Edward contends that this excuse "has merit." But Edward's attorney had not in fact withdrawn — he filed the motion to withdraw on May 31, three weeks after the court issued the no-contact order, and it was another two weeks later that the court granted the motion to withdraw. Under the circumstances, service on the attorney alone was mandated by the civil rules.[13] Until he had successfully withdrawn, the attorney continued to act as Edward's agent, and the attorney's acts and omissions are attributed to his client.[14]

It may be, as Edward argues, that the attorney's failure to withdraw was inadvertent. But more critically, the attorney did not respond to the motion for a no-

---

[12] *Farrell v. Dome Lab'ys, Div. of Miles Lab'ys, Inc.*, 650 P.2d 380, 384 (Alaska 1982); *see also Chena Obstetrics*, 502 P.3d at 958-59 (clarifying "that although an attorney's failure to advance a legal claim due to mistake, inadvertence, or neglect is usually inexcusable, in exceptional cases an attorney's neglect *may* be excusable and can therefore be grounds for relief under Rule 60(b)(1)" (emphasis in original)). This is not one of those exceptional cases.

[13] Alaska Civil Rule 5(b) provides: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court."

[14] *See, e.g.*, *Chena Obstetrics*, 502 P.3d at 963 (noting, in Rule 60(b)(6) context, that "in most cases the client voluntarily chose the attorney as his representative and therefore cannot avoid the consequences of the acts and omissions of his freely selected agent").

contact order when it was served on him, nor, according to Edward, did he inform his client that the motion had been filed. The superior court could reasonably conclude that, under our precedent, this series of failures — "whether attributable to mistake, inadvertence or neglect"[15] — was not of the sort that constitutes "excusable neglect" for purposes of relief under Rule 60(b)(1).[16]

Recently, in *Chena Obstetrics*, we declined to "rule out the possibility that gross neglect by an attorney may justify relief from judgment under Rule 60(b)(6)."[17] But we held that to warrant such relief, "gross attorney neglect must rise to the level of abandoning the client."[18] The attorneys in *Chena Obstetrics* had failed to oppose a summary judgment motion "but moved for reconsideration shortly after it was granted"; they failed to respond to discovery requests "but ultimately did respond, albeit with 'severely deficient' responses"; and they were late in opposing another summary judgment motion "but then moved for relief under Rule 60."[19] We concluded that the lawyers' conduct displayed ignorance of "Alaska's procedural rules and its substantive framework for medical malpractice" rather than abandonment and therefore "[did] not

---

**15**     *Farrell*, 650 P.2d at 384.

**16**     *See Chena Obstetrics*, 502 P.3d at 957-58 (affirming superior court's conclusion that relief was not available under Rule 60(b)(1) for counsel's failure to oppose summary judgment motions); *Erica G.*, 357 P.3d at 788-89 (affirming superior court's denial of Rule 60(b)(1) relief when attorney claimed failure to respond to summary judgment motion was due to mail-forwarding problems, calendaring mistakes, and conflicting trial commitments).

**17**     502 P.3d at 963; *see id.* at 961 n.42 (recognizing that relief under Rule 60(b)(6) "is reserved for extraordinary circumstances not covered by the preceding clauses" of the rule).

**18**     *Id.* at 963.

**19**     *Id.*

justify relief under Rule 60(b)(6)"; the client's remedy instead was "an action against her attorneys."[20]

Here, too, the attorney's actions are inconsistent with an abandonment of the client that could justify relief under Rule 60(b)(6). Although the attorney did not respond to the motion for a no-contact order, once he received the signed order itself he contacted Sarah's counsel and attempted, on his client's behalf, to negotiate a waiver of the attorney's fees claim. While the negotiation was unsuccessful — ostensibly because Edward's attorney failed to meet Sarah's demand for a stipulation — it shows that he was still representing his client.

Because Edward fails to demonstrate excusable neglect or attorney conduct consistent with complete abandonment, the superior court did not abuse its discretion by denying Rule 60(b) relief.

## V.    CONCLUSION

We AFFIRM the superior court's denial of Edward's motion for relief from the award of attorney's fees and costs.

---

[20]    *Id.* at 964.